628 N.W.2d 262 (2001)
262 Neb. 85
In re Complaint Against Richard W. KREPELA, County Court Judge of the Seventh Judicial District of the State of Nebraska.
State of Nebraska ex rel. Commission on Judicial Qualifications, Relator,
v.
Richard W. Krepela, Respondent.
No. S-35-000001.
Supreme Court of Nebraska.
June 29, 2001.
*265 Clarence E. Mock III, Oakland, of Johnson & Mock, for respondent.
Anne E. Winner, Lincoln, of Keating, O'Gara, Davis & Nedved, P.C., for relator.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge.
Per Curiam.
This is an original proceeding, following a complaint filed by the Nebraska Commission on Judicial Qualifications (Commission), against Richard W. Krepela, a judge of the county court for the Seventh Judicial District. The complaint alleged that actions taken by Krepela before he became a judge constitute conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Neb.Rev.Stat. § 24-722(6) (Reissue 1995). The complaint alleges that in 1984, while serving as the county attorney for Madison County, Krepela altered a copy of a police report in a criminal case, provided the altered report to defense counsel, and asked the officer who made the report to either alter his original report or alter his testimony to conform to the changes made by Krepela. The complaint further alleges that Krepela did not disclose his actions to officials or entities and that he violated criminal statutes.
A special master concluded that in light of Krepela's otherwise good record, his actions did not constitute conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Commission found by clear and convincing evidence that Krepela altered the police report and asked the officer who wrote the report to alter the original. The Commission determined that Krepela's actions did constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute and recommended that Krepela be removed from office. We enter a judgment of suspension for 6 months without pay.

BACKGROUND
Krepela was admitted to the practice of law in 1976. In 1984, he was serving as county attorney for Madison County, Nebraska, and in 1989, he was appointed judge of the county court. The actions which form the basis of the complaint occurred in 1984, during the course of Krepela's investigation and prosecution of Robert Edward Hunt, Jr., for the murder of a Norfolk woman. See State v. Hunt, 220 Neb. 707, 371 N.W.2d 708 (1985). Ultimately, Krepela filed first degree murder charges against Hunt. When Hunt waived preliminary hearing on May 2, 1984, Krepela agreed to provide Thomas H. DeLay, Hunt's court-appointed defense counsel, with copies of the police reports which included Hunt's confessions to Capt. Leon C. Chapman of the Norfolk Police Department.

*266 ALTERATION OF POLICE REPORT
Krepela admits that before forwarding copies of the police reports to DeLay, he created a false report by altering a copy of an 18-page police report. This was accomplished by removing pages 17 and 18 from the true copy of the report and instructing his secretary to type a false page as a substitution for the final page of the copy that was provided to DeLay. The following information was removed from Chapman's report:
Hunt then stated "I think that you and I had agreed that before I made any further statements [I] would have an attorney.["] This officer then looked at him and stated to him that I didn't recall [it] being that way, and that if he recalled that when we talked before that I had asked him about [a] written or taped statement and that he wanted an attorney before he made either one of those [an]d that he had even stated at that time other than that he was willing to cooperate with us ... but wanted an attorney before giving a taped or written [st]atement.
Sometime before June 7, DeLay filed a motion to suppress, in part due to assertions by Hunt that he had asked for an attorney before giving a confession.
Krepela testified that he does not know exactly why he falsified the police report or what his thinking was at the time. In general, Krepela testified that he made a very bad error in judgment and that he did something that he would never normally do. Krepela testified that he felt a great deal of embarrassment and remorse over what he had done.
The record shows that Krepela had become personally and emotionally involved in the prosecution of the Hunt case. Krepela testified that he knew the victim's fiance and the fiance's family very well. There was also evidence that Hunt had stalked the neighborhood in which Krepela's own fiance lived. Krepela testified that his personal involvement with the case interfered with his decisionmaking and caused him to make mistakes.
Krepela testified that in 1984, he was short of help because a deputy county attorney had quit. He stated he was working 10 to 12 hours per day and was handling essentially all of the work at the county attorney's office, including the preparation of search warrants at any time of the day or night. Krepela testified that during this time, he was suffering from fatigue and was having difficulty making decisions. The record contains an affidavit from Stephen P. Finn, a county court judge, stating that around the time of the murder, Krepela was trying to manage a caseload that no county attorney could adequately handle. Judge Finn stated that out of concern for the proper management of the court docket and for Krepela's mental and physical health, he confronted Krepela about getting someone to help him in the county attorney's office. Judge Finn stated that not long after that conversation, Krepela did hire another deputy to assist him.

KREPELA'S REQUEST THAT CHAPMAN ALTER ORIGINAL POLICE REPORT
The complaint alleges that Krepela asked Chapman to alter his original police report or to make his testimony consistent with the alterations made by Krepela. Chapman testified that Krepela told him that part of the report had been reworded. Chapman stated that as far as he could recall, Krepela asked him to change the original police report to reflect the changes. Chapman admitted, however, that he could not recall the exact words of his conversation with Krepela and indicated that his memory of the events was "foggy." Chapman stated that he could not recall if Krepela asked him to alter his *267 testimony, but also stated that he told Krepela that he could not testify to something that was not in his original report. When questioned further by the special master, Chapman stated that his testimony was that he thought Krepela asked him to change the original report.
Krepela testified that he did not ask Chapman to alter his original report or testimony. Krepela testified that he spoke with Chapman in an attempt to explain what he had done and to explain that he was going to fix the problem. Krepela testified that he had difficulty explaining the situation and that what he ended up telling Chapman did not make much sense. According to Krepela, he told Chapman not to worry about it and left the office. James D. Smith, an attorney who later took over the prosecution of the case, testified that when he later spoke with Chapman about the altered report, Chapman appeared surprised and annoyed to learn that his report had been altered. Herbert Angell, a coworker of Chapman, testified that Chapman never told him that Krepela asked Chapman to alter the original report and indicated that Chapman would normally discuss such an occurrence if it had happened. Angell testified that he believed Krepela would remember what actually happened much better than Chapman would.
The Commission found by clear and convincing evidence that sometime between May 2 and June 8, 1984, Krepela asked Chapman to alter his original report in order to conform to and reflect Krepela's changes. The Commission stated that while Chapman could not recall, 15 years later, the exact words used by Krepela, Chapman's testimony was clear that Krepela had asked him to change the original report because only Krepela's copy had been turned over to Hunt's attorney. The Commission agreed with the finding of the special master that unless Chapman had altered the original report to conform to the one turned over to Hunt's attorney, Krepela would have encountered a serious problem. The problem would have arisen when the original report was produced in the motion to suppress hearing.

DISCLOSURE TO JUDGE
Krepela testified that during his conversation with Chapman, he realized that he was too emotionally involved in the case and that his actions were harming the case. Krepela's testimony indicates that he felt it was not a fear of getting caught that made him want to confess, but a realization that his actions would make Chapman appear to be a bad witness and a general feeling that he regretted what he had done. Krepela stated that he then called Smith and made arrangements for Smith to take over the case. Krepela testified that the next day, he and Smith went to court and met with DeLay and Judge Richard P. Garden. Krepela testified that he could not remember the exact words he used to explain the situation to Judge Garden, but stated that he had no doubt that Judge Garden knew exactly what had happened. DeLay testified that he did not have a full understanding of what happened until he actually received the correct police report sometime after the meeting with Judge Garden. DeLay also testified, however, that Krepela specifically told Judge Garden that he had changed the report and that he felt that Judge Garden had been fully informed of what had happened. DeLay testified that Krepela apologized to both DeLay and Judge Garden. DeLay testified that after the meeting, he believed that what Krepela had done was unethical and that he conducted research to determine whether he had a duty to further disclose the information. After conducting that research, DeLay concluded that disclosure to the court *268 was sufficient. DeLay stated that he did some research and could not find anything to indicate that Krepela's actions were illegal.
The Commission concluded that Krepela, realizing the false report was likely to be discovered in view of the pending motion to suppress, made arrangements for the appointment of Smith as special prosecutor and disclosed the alteration of the report to Smith. In its findings, the Commission stated that there was disagreement over the extent to which disclosure of the falsified document was made to the trial court. The Commission noted Krepela's testimony that he could not remember the specifics as to how the matter was presented to Judge Garden and did not recall whether Judge Garden had been presented with the contrasting copies of the police report. The Commission also emphasized DeLay's testimony that he did not have a full understanding of what had transpired until he saw and compared the two copies of the police report. The Commission did not, however, make a clear finding of fact regarding the extent to which Judge Garden was informed of what Krepela had done, nor did it conclude by clear and convincing evidence that Judge Garden was not informed of the alteration.
The events surrounding the falsified report came to light in a 1997 postconviction proceeding initiated by Hunt. In that proceeding, Judge Garden found that as soon as Krepela realized the impact of what he had done, he immediately took steps to remedy the situation. Judge Garden ultimately denied postconviction relief, and this court affirmed in State v. Hunt, 254 Neb. 865, 580 N.W.2d 110 (1998). In its finding of fact, the Commission emphasized that no evidence had come before it to suggest that Hunt was denied due process of law or did not receive a fair trial.

CONCLUSIONS OF SPECIAL MASTER AND COMMISSION
The special master ultimately concluded that Krepela altered the report and that Krepela asked Chapman to alter the original report. The special master determined that due to Krepela's unblemished record as a lawyer, together with the uncontradicted and favorable evidence regarding his service as a judge, his actions constituted "uncharacteristic conduct" that occurred 16 years ago and did not constitute conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
The Commission found by clear and convincing evidence that Krepela altered the police report and that he asked Chapman to alter the original report. The Commission stated that Krepela's actions constituted, at least facially, violations of at least three criminal statutes: Neb.Rev.Stat. § 28-901 (Reissue 1995) (obstructing government operations); Neb.Rev.Stat. § 28-911 (Reissue 1995) (abuse of public records); and Neb.Rev.Stat. § 28-922 (Reissue 1995) (tampering with physical evidence). Krepela was not prosecuted for any such offenses, and the statute of limitations has run on them. The Commission unanimously concluded that Krepela's actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
In its findings, the Commission noted that the record contains a "most impressive collection" of letters of support for Krepela and that he had an 87.2-percent retention recommendation from lawyers participating in a 2000 Nebraska State Bar Association evaluation. He was retained in office by the voters in the 2000 general election. The record also contains a petition in support of Krepela signed by numerous people and various affidavits in support of Krepela. In addition, nothing *269 in the record suggests that Krepela has ever engaged in any other inappropriate conduct, and the record indicates that Krepela has an excellent reputation in the community for honesty and integrity. Krepela testified that he did not disclose the altered report when he applied to be a county judge because he did not believe he was required to do so. The record contains a copy of Krepela's application for the judicial vacancy. There are no parts of the application which specifically require disclosure of Krepela's actions, although one portion reads: "[S]tate any other information which you regard as pertinent."
A majority of the Commission recommended that Krepela be removed from his position as a county judge. Krepela filed a petition in error appealing the recommendation of the Commission. Krepela asks that if a sanction is to be imposed, that he be allowed to remain in office.

ASSIGNMENTS OF ERROR
Krepela appeals the Commission's findings of fact that he (1) was motivated to disclose that he altered the report because he realized the false report was likely to be discovered in view of the pending motion to suppress, as opposed to any genuine desire to rectify his error and comply with his ethical duties; (2) would encounter a serious problem when the original report was produced in the hearing on the motion to suppress when he disclosed the alteration before the hearing occurred; and (3) requested Chapman to alter his original report. Krepela appeals the Commission's conclusions of law that he (1) engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute, (2) violated at least three Nebraska criminal statutes, and (3) should be removed from his position as a county judge.

STANDARD OF REVIEW
In a review of the findings and recommendations of the Commission on Judicial Qualifications, the standard of review is de novo on the record of the proceedings before the special master. In re Complaint Against Jones, 255 Neb. 1, 581 N.W.2d 876 (1998).

ANALYSIS
We note that conduct which took place before the respondent became a judge can nevertheless be considered conduct prejudicial to the administration of justice which brings the judicial office into disrepute. See State ex rel. NSBA v. Krepela, 259 Neb. 395, 610 N.W.2d 1 (2000). Upon our independent inquiry, this court must determine whether the charges against Krepela are supported by clear and convincing evidence and which, if any, canons of the Nebraska Code of Judicial Conduct adopted by this court and subsections of § 24-722 have been violated. If violations are found, this court must then determine what discipline, if any, is appropriate under the circumstances. See In re Complaint Against Jones, supra; In re Complaint Against Empson, 252 Neb. 433, 562 N.W.2d 817 (1997). The complaint relies on § 24-722 which provides in relevant part:
A Justice or judge of the Supreme Court or judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed six months, or removed from office for ... (6) conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
The complaint does not allege that Krepela violated any other subsection of § 24-722, nor does the complaint allege any violations of the Nebraska Code of Judicial Conduct.
*270 Neb. Const. art. V, § 30(1), and Neb.Rev.Stat. § 24-721 (Reissue 1995) provide that if the Commission finds the charges are established by clear and convincing evidence, it shall recommend appropriate disciplinary sanctions to this court. Therefore, we may concern ourselves only with the counts the Commission concluded were established by clear and convincing evidence. In re Complaint Against Jones, supra. See In re Complaint Against Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984).
The special master found by clear and convincing evidence that Krepela altered the police report and that he asked Chapman to alter his original report to reflect the changes made by Krepela. The Commission adopted the findings of the special master, thus reaching the same conclusion. Neither the special master nor the Commission found by clear and convincing evidence that Krepela failed to disclose his actions to any official person or entity. Although both the special master and the Commission made conclusions of law that Krepela violated at least three criminal statutes, it was recognized that Krepela was not charged with any criminal offense. Neither the special master nor the Commission found by clear and convincing evidence that any criminal statutes were violated. Additionally, neither the special master nor the Commission found by clear and convincing evidence that Krepela was motivated to disclose the altered report due to fear that he would be discovered or face difficulties at the hearing on the motion to suppress. We do not address those charges in the complaint that the Commission did not find were supported by clear and convincing evidence.
We agree with the Commission that the evidence is clear and convincing that Krepela altered the police report. Krepela admits this fact. We further agree that the evidence is clear and convincing that Krepela asked Chapman to alter his original report to reflect the changes made by Krepela. Although Chapman was unable to remember details of his conversation with Krepela regarding the report, Chapman's testimony as a whole and in response to questions by the special master was clear that he believes Krepela wanted him to alter the original report. We next address whether the Commission correctly determined that Krepela's actions of altering the report and asking Chapman to alter the original report constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute. We have defined such conduct as follows:
Conduct which falls short of reaffirming one's fitness for the high responsibilities of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute.... It includes conduct which would justify a reasonable man in believing that a result achieved by a judge was achieved because of his position and prestige ... and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office.... It depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers.
(Citations omitted.) In re Complaint Against Kneifl, 217 Neb. at 475, 351 N.W.2d at 695-96. See In re Complaint Against Kelly, 225 Neb. 583, 407 N.W.2d 182 (1987).
We agree with the Commission that Krepela's actions constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Krepela's actions were plainly dishonest, *271 deceitful, and in violation of his duties as a prosecutor. As the Commission noted, Krepela's actions were designed to impede discovery of a possible Sixth Amendment violation.
Krepela's actions were clearly conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office. The fact that the conduct took place over 16 years ago does not alter the conclusion that his actions constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Having made this determination, we now address the more difficult task of determining an appropriate sanction. The circumstances are undeniably uniquea disciplinary proceeding brought against a sitting judge for misconduct that occurred more than 16 years ago when the judge was a prosecutor. The goals of disciplining a judge in response to inappropriate conduct are to preserve the integrity of the judicial system as a whole and to provide reassurance that judicial misconduct will not be tolerated. In re Complaint Against Jones, 255 Neb. 1, 581 N.W.2d 876 (1998); In re Complaint Against Empson, 252 Neb. 433, 562 N.W.2d 817 (1997). Sanctions should be imposed where necessary to safeguard the bench from those who are unfit. In re Complaint Against Jones, supra; In re Complaint Against Kelly, supra. The discipline imposed must be designed to announce publicly our recognition that there has been misconduct. It must be sufficient to deter the respondent from engaging in such conduct again, and it must discourage others from engaging in similar conduct in the future. Id. We weigh the nature of the offenses with the purpose of the sanctions and examine the totality of the evidence to determine the proper discipline. See In re Complaint Against Jones, supra.
That Krepela's conduct was serious and deserving of a substantial degree of discipline is obvious. We agree with the statement of the Commission that "[c]reating an altered, falsified report and requesting the investigating officer to change the original to conform to the falsification are actions striking at the very heart of the justice system." When such actions are taken by a prosecutor, this is even more true.
We do not ignore the fact, however, that the conduct was an isolated incident that occurred more than 16 years ago and was disclosed to Judge Garden and opposing counsel. We have stated that the respondent's general performance as a jurist may be a relevant factor to consider in determining the appropriate discipline. In re Complaint Against Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984).
Nothing in the record suggests that Krepela has ever engaged in any other inappropriate conduct or that he is currently unfit to serve as a county judge. To the contrary, the evidence in the record reflects that Krepela has a good reputation as a judge and that he is well respected. In the 16 years since the conduct at issue occurred, no other acts of misconduct have ever been attributed to him. The Commission found, and we agree, that the public has been served well by Krepela since the incident, both in his remaining term as county attorney and since 1989 as a county judge. As one court has noted, if the conduct at issue were truly evidence of a character flaw affecting fitness, it would be likely that some hint of the flaw would surface during the many intervening years that the respondent served as a judge. See Inquiry Concerning Davey, 645 So.2d 398 (Fla.1994).
*272 We determine that the seriousness of Krepela's conduct must be balanced by the fact that we find the conduct to be an aberration. When considering the isolated nature of the conduct and Krepela's otherwise exemplary record, we do not believe that the integrity of the judicial system will be eroded if Krepela remains on the bench. Accordingly, we determine that removal from office is unwarranted. We must recognize, however, the very serious nature of the conduct at issue. Due to the nature of Krepela's conduct, we believe that a heavy sanction in necessary. The Legislature has provided at § 24-722 that, short of removal, the maximum suspension shall not exceed 6 months. Accordingly, we determine that the appropriate sanction is a 6-month suspension from office without pay, effective on the issuance of the mandate.
JUDGMENT OF SUSPENSION WITHOUT PAY.
HENDRY, Chief Justice, not participating.
McCORMACK, Justice, dissenting.
I agree with all of the majority opinion except the sanction to be imposed. I would impose the sanction recommended by the Commission that Krepela should be removed from his position as a county judge.
Neb.Rev.Stat. § 24-722 (Reissue 1995) sets out the possible penalties to be imposed on a Nebraska judge. Unfortunately, this statute does not allow any penalty between 6 months' suspension without pay and removal from office. If, in Krepela's case, there was a possible sanction of perhaps 2 years' suspension without pay, I would, in all probability, vote for that sanction.
While it is true, as noted in the majority opinion, that Krepela's actions were uncharacteristic, that Krepela's long record as a lawyer and then as a judge was unblemished except for the offense under consideration, and that Krepela promptly reported the alteration of this report, I feel that the altering of a police report and then requesting the investigating officer to change the original to conform to the false report is so egregious as to warrant removal. This type of conduct by any lawyer, much less by a county attorney prosecuting a first degree murder case, goes to the very heart of our judicial system because it involves the integrity of the system. As such, given our choice of 6 months' suspension or removal, this requires, in my opinion, removal from office.
The seriousness of the offense, in my opinion, overcomes and trumps the age of this transgression, Krepela's unblemished record, and Krepela's prompt report of this alteration.