651 N.W.2d 551 (2002)
264 Neb. 740
In re COMPLAINT AGAINST Lyn V. WHITE, County Court Judge of the Fourth Judicial District of the State of Nebraska.
State of Nebraska ex rel. Commission on Judicial Qualifications, Relator,
v.
Lyn V. WHITE, Respondent.
No. S-35-010002.
Supreme Court of Nebraska.
October 4, 2002.
*556 Susan Ann Koenig, of Law Office of Susan Ann Koenig, P.C., L.L.O., Omaha, for respondent.
Anne E. Winner and Gary L. Young, Lincoln, for relator.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
PER CURIAM.
The respondent, Lyn V. White, a judge of the county court for Douglas County, has been charged with several violations of the Nebraska Code of Judicial Conduct (Code). The charges are based on Judge White's conduct after a sentence that she imposed, in a case involving a domestic protection order, was reversed on appeal by the district court. This case is not about domestic violence or whether the sentence imposed by Judge White was appropriate. Rather, the issue in this case is whether Judge White's quarrel with the district court's decision caused Judge White to abandon the impartiality required of a judge no matter what accusations are made against those who appear before the court. We conclude that Judge White's unethical conduct warrants a 120-day suspension from office without pay.

PROCEDURAL BACKGROUND
The Nebraska Commission on Judicial Qualifications (Commission) initiated this original action against the respondent in a complaint filed June 1, 2001. An amended complaint filed August 17, 2001, alleged that the respondent had engaged in conduct that had been in violation of Neb.Code. of Jud. Cond., Canons 1, 2, and 3B(7) and (9) (rev.2000), and that such conduct was prejudicial to the administration of justice and brought the judicial office into disrepute. See Neb.Rev.Stat. § 24-722 (Reissue 1995). An evidentiary hearing was held on October 1 before a special master appointed by this court. Based upon the record made before the special master, the Commission concluded that the respondent's conduct deviated from the standards for ethical conduct mandated by Canons 1, 2A, and 3B(7) and (9) of the Code, and the Commission recommended that the respondent be suspended *557 from office, without pay, for a period of 45 days.
The Commission filed its findings and recommendation in this matter on March 18, 2002. Pursuant to Neb. Comm. on Jud. Qual. R. of Proc. 17(a) (rev.2001), a respondent may file, within 20 days of the filing of the recommendation of the Commission, a petition, accompanied by a brief, asking this court to modify or reject the recommendation of the Commission. Failure to file such a petition and brief within the time provided may be deemed a consent to determination on the merits, based upon the record filed by the Commission. See rule 17(b).
Pursuant to a motion by the respondent, the respondent was granted an extension of time until May 23, 2002, to respond to the Commission's findings and recommendation. On that date, the respondent filed a consent to the discipline set forth in the findings and recommendation of the Commission, along with a notarized statement and a waiver of oral argument. On June 3, counsel for the Commission filed a responsive motion, asking this court to adopt the findings and recommendation of the Commission and impose the recommended discipline, and acceding to the respondent's waiver of oral argument. On June 7, the respondent filed a response renewing her consent to discipline and waiver of oral argument and making clear her understanding that this court would review the record de novo and could accept, reject, or modify the recommendation of the Commission.
Upon consent of the respondent, an order of reprimand, discipline, suspension, retirement, or removal may be entered by this court at any stage of the proceedings. See Neb. Comm. on Jud. Qual. R. of Proc. 15(c) (rev.2001). The respondent filed such a consent and filed neither a petition to modify or reject the recommendation of the Commission nor a respondent's brief. Accordingly, this court ordered the matter submitted to this court on the record filed by the Commission. As briefs have not been filed, the matter was submitted without oral argument. See, rule 17(c); Neb. Ct. R. of Prac. 11E(4) (rev.2000).

STANDARDS
Pursuant to § 24-722(6), a judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed 6 months, or removed from office for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The object of the Code is to delineate what conduct should be avoided for its prejudicial potential. Therefore, a clear violation of the Code constitutes, at a minimum, a violation of § 24-722(6). In re Complaint Against Jones, 255 Neb. 1, 581 N.W.2d 876 (1998).
In a review of the findings and recommendations of the Commission, this court shall review the record de novo and file a written opinion and judgment directing action as it deems just and proper, and may reject or modify, in whole or in part, the recommendation of the Commission. See, Neb. Const. art. V, § 30(2); Neb.Rev.Stat. § 24-723 (Reissue 1995); Neb. Comm. on Jud. Qual. R. of Proc. 18 (rev.2001); In re Complaint Against Krepela, 262 Neb. 85, 628 N.W.2d 262 (2001). Upon our independent inquiry, this court must determine whether the charges against the respondent are supported by clear and convincing evidence and which, if any, canons of the Code adopted by this court and subsections of § 24-722 have been violated. In re Complaint Against Krepela, supra. If violations are found, this court must then determine what discipline, if any, is appropriate under the circumstances. Id.
*558 FACTUAL FINDINGS
The factual findings of the Commission have not been challenged before this court. Having reviewed the record de novo, we conclude that the factual determinations set forth in the Commission's findings and recommendation are well supported by the record and have been proved by clear and convincing evidence. See id. The following statement of the underlying facts of this case has been substantially adopted from the recitation of facts set forth by the Commission.
The incidents relevant to this opinion stem from a criminal proceeding originating in the Douglas County Court, State v. Brink, No. CR99-9443, which will be referred to generally as "the Brink case." The respondent presided over the Brink case at the county court level. The specific details of the criminal proceeding are significant only as background for the conduct of the respondent. Dayne R. Brink was charged with the misdemeanor offenses of violating a protection order and stalking. Pursuant to a plea agreement, Brink pled guilty to one protection order violation and the remaining charges were dismissed. On July 15, 1999, the respondent placed Brink on probation for 1 year. Subsequently, Brink was charged with violating his probation, and on December 16, Brink entered a guilty plea to this charge, again before the respondent. The respondent revoked Brink's probation and sentenced him to the maximum statutory penalty of 180 days' confinement and a $1,000 fine.
Brink appealed the sentence to the district court, alleging that the respondent had exhibited bias toward him at the time of his conviction and sentencing. The district court, on August 14, 2000, found that a reasonable person could question the respondent's impartiality, and the district court vacated Brink's sentence and remanded the case for resentencing by another county judge (August 14 order). The Commission noted, as does this court, that we are not concerned with whether the district court's decision in the Brink case was legally or factually correct. The issue in the instant case is not whether the district court acted correctly, but whether the respondent's response to the district court's decision violated the Code.
Tressa Alioth was employed by the Douglas County Attorney as a deputy county attorney and had been assigned the responsibility of representing the State in the Brink case. When the August 14 order was entered by the district court, Alioth was asked by a supervisor within her office to provide a copy of the August 14 order to the respondent to determine whether the respondent had any objections if the Brink case was appealed by the State to the Nebraska Court of Appeals. This contact with the respondent was apparently made because of a perception in the county attorney's office that the respondent might not want certain things "aired" that appeared on the record in the Brink case. Alioth gave the respondent a copy of the August 14 order while the respondent was on the bench handling unrelated matters. Alioth asked for the respondent's view on the possibility of a further appeal.
On the following day, the respondent encountered Alioth on the stairs; the respondent asked Alioth to come into the respondent's chambers. In chambers, the respondent engaged Alioth in a lengthy, detailed, and largely one-sided conversation during which the respondent itemized specific arguments as to why the August 14 order was erroneous, directed Alioth to take notes on the respondent's comments, and supplied Alioth with copies of cases to support the legal position supported by the respondent. Alioth's notes, and the cases *559 provided to Alioth by the respondent, are present in the record. While the testimony of Alioth and the respondent conflicts regarding when the conversation took place, the length of the conversation, and other details, there is no significant disagreement regarding the substance of the conversation. As the respondent later stated on the record:
I read the opinion and had a conference with Miss Alioth, and this was within days of the rendering of the opinion by [the district court]. I gave her case law and statutes demonstrating that as a judge I had followed the law in all respects, that none of my actions were unlawful, that there was no basis in law or in fact for a finding of bias against this Defendant.
I further pointed out to the County Attorney that in the event this matter was not appealed, that the criminal defense lawyers in this jurisdiction would be using it to have me recuse myself in other domestic violence cases. The County Attorney, Miss Alioth, acknowledged the Court's concerns and assured me that she would file an appeal.
I went through the opinion with her pointing out appeal issues.
The county attorney's office later determined that it would appeal the Brink decision; however, the county attorney's office inadvertently failed to file a timely notice of appeal. Alioth had been out of the office for an extended period of time and did not learn of the failure to appeal until after her return, when Brink's name appeared on a list for resentencing.
Within a day or two of the release of the August 14 order, Kelly Steenbock, an assistant public defender and Brink's counsel on the probation violation, was in the respondent's courtroom in connection with an unrelated proceeding. The respondent initiated a conversation with Steenbock regarding the Brink case. In this conversation, the respondent told Steenbock about the respondent's displeasure with the district court's decision in the Brink case, and the respondent advised Steenbock that the Brink case would be appealed by the county attorney. According to Steenbock, the respondent stated that the respondent had "ordered" the county attorney to file an appeal. The respondent referred to her prior contact with Alioth, but did not reveal that the respondent had provided the county attorney with arguments and authority intended to aid in the prosecution of the appeal.
On or shortly before October 27, 2000, the respondent again met Alioth in the hallway and initiated a conversation, during which the respondent gave Alioth the name of a resource person with a national organization from whom, in the respondent's words, "[Alioth] might want to seek additional information" to assist in the preparation of the appellate brief that the respondent evidently believed would be filed. Alioth did not immediately respond, but returned to her office, and at the direction of her supervisor, Alioth telephoned the respondent later that day and advised the respondent that an appeal had not been filed and that Brink had been resentenced.
By October 27, 2000, the respondent was aware that no appeal had been taken from the August 14 order. That afternoon, the respondent conversed with Douglas County District Court Presiding Judge Mary G. Likes, who was both a personal and professional acquaintance of the respondent. The subject of the August 14 order was discussed, including the content of the August 14 order and the county attorney's failure to appeal from the order. Over the following weekend, Judge Likes attempted to inform the respondent, through a family member, that Judge Likes would consider *560 appointing a special prosecutor in the Brink case.
On October 30, 2000, the respondent came to Judge Likes' chambers with a request that Judge Likes appoint a special prosecutor for the purpose of pursuing an appeal in the Brink case. By this time, Brink had been resentenced by another judge of the county court, and the respondent believed that the final day for filing an appeal from the resentencing was either October 30 or 31. The county attorney's office had deliberately chosen not to appeal from Brink's resentencing. Judge Likes commenced the proceeding as follows:
We are here in a matter that is captioned the State of Nebraska v. Dayne R. Brink.... It is an appeal from a County Court ruling ... that was in the County Court of Douglas County.
I have the District Court file in front of me. I have reviewed both that file as well as the pleadings, bill of exceptions, from the County Court. Present in court is Judge Lyn White, County Court Judge from Douglas County. And, Judge White, I will ask you to please recite for the record why you are here.
The record is clear that neither the State nor Brink was present or represented by counsel at the commencement of the October 30 district court proceeding, nor does the record indicate that either the State or Brink was notified personally or through counsel prior to the commencement of the hearing.
The respondent invoked Neb.Rev.Stat. § 23-1205 (Reissue 1997), which provides, in relevant part:
In the absence, sickness or disability of the county attorney and his deputies, or upon request of the county attorney for good cause, the court may appoint an attorney to act as county attorney in any investigation, appearance, or trial, by an order to be entered upon the minutes of the court....
The respondent moved the district court for a finding that
the County Attorney for Douglas County is either disabled or disqualified to prosecute the appropriate appeals in the case of DayneState v. Dayne R. Brink, with the same Appellate numbers as have already been recited by the Court into the record.
... And I am asking you to appoint a Special Prosecutor to prosecute the appeals necessary in this case.
In support of this motion, the respondent explained several reasons why she believed that the August 14 order was in error.
The district court commented, at the conclusion of the October 30, 2000, proceeding, that a ruling would be reserved until the county attorney's position could be stated for the record. The hearing was resumed on October 31, and Alioth gave sworn testimony. Alioth said, on the record, "I'd like to note that I didn't have any notice of any kind of hearing ... so I'm here kind of blind sided." The record reflects no attempt to notify Brink or his counsel about the October 31 hearing. The district court's disposition of the October 30 motion, if any, is not apparent from the record.
On December 21, 2000, the respondent, through personal counsel, filed a petition in the district court seeking the appointment of a special county attorney, pursuant to § 23-1205, "to review the content and law of the decision rendered by a judge of this Court in State v. Brink, Doc. 149 No. 325, and render an advisory opinion" regarding that matter. The petition was served on both Alioth and Steenbock. Prior to hearing, this petition was voluntarily dismissed by the respondent.

*561 ANALYSIS

COMMUNICATIONS WITH COUNTY ATTORNEY
We turn first to the respondent's contacts with Alioth. We determine that the respondent's contacts with Alioth, on the occasions set forth above, involved ex parte communications in violation of Canon 3B(7) of the Code, which provides, in relevant part:
A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....
We first observe that the respondent's initial communications with Alioth regarding the August 14 order, when Alioth presented a copy of the district court's decision to the respondent, were ex parte communications for which the respondent is responsible, despite the fact that the communications were initiated by Alioth. Canon 3B(7) of the Code provides that a judge shall not "initiate, permit, or consider" ex parte communications. (Emphasis supplied.) While the contact was not initiated by the respondent, it was clearly permitted by her. The county attorney's lapse of judgment in initiating the communications did not excuse the respondent from her ethical responsibility to terminate the communications as soon as the nature of the communications became (or should have become) apparent to the respondent.
We also determine that the respondent's communications with Alioth were impermissible ex parte communications despite the fact that the Brink case was not directly pending before the respondent. Although the district court ordered that the Brink case resentencing be performed by a different county court judge, the language of Canon 3B(7) simply proscribes ex parte communications concerning a "pending or impending" proceeding and does not limit that prohibition by reference to the docket of a particular judge. As a general rule, a case is considered pending until the appellate process is complete. See, e.g., Roberts v. Com'n on Judicial Performance, 33 Cal.3d 739, 661 P.2d 1064, 190 Cal.Rptr. 910 (1983) (rejecting contention that trial judge may participate personally in ex parte communications with real party regarding subsequent appellate proceedings reviewing judge's order), disapproved on other grounds, Doan v. Commission on Judicial Performance, 11 Cal.4th 294, 11 Cal.App.4th 474A, 45 Cal. Rptr.2d 254, 902 P.2d 272 (1995); Harrington v. State, 584 N.E.2d 558, 561 (Ind.1992) (trial court violated Canon 3, "forsaking his stance of neutrality" in writing letter to attorney general suggesting that attorney general file motion for rehearing of appellate decision reversing trial court). See, also, In re White, 53 Ala.App. 377, 300 So.2d 420 (1974).
The comments to Canon 3B(7) provide that "[i]f communications between the trial judge and the appellate court with respect to a proceeding appealed from that trial judge is permitted, a copy of any written communication or the substance of any oral communication should be provided to all parties." While the circumstances of the instant case do not involve communications between the trial judge and appellate court, the clear implication of the comment is that Canon 3B(7) still applies to a trial judge when a matter is pending on appeal.
Moreover, the stated purpose of the respondent's meetings with Alioth was to assist the county attorney in convincing a higher appellate court to reverse the judgment *562 of the district court, thus reinstating the original sentence imposed by the respondent. If an appeal had been perfected and the State had prevailed, the case might have been remanded to the respondent for further proceedings. The potential that a case may be remanded to a trial judge provides an additional rationale for prohibiting ex parte communications between the trial judge and the parties even while the matter is on appeal.
We also conclude that the respondent's communications with Alioth represent clear violations of Canons 1 and 2A of the Code. We focus particularly on the second and third meetings between Alioth and the respondent, in which the respondent by her own admission provided Alioth with advice and authority intended to aid the county attorney in appealing the reversal of Brink's sentence. In so doing, the respondent, figuratively speaking, stepped down from the bench and assumed the State's place at the prosecutor's table. See In re White, supra. See, also, e.g., Disciplinary Proc. Against Aulik, 146 Wis.2d 57, 429 N.W.2d 759 (1988); State v. Cash, 867 S.W.2d 741 (Tenn.Crim.App.1993).
Canon 1 is entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary" and provides, in relevant part, that "[a]n independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Canon 2 is entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities," and Canon 2A states that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
It is difficult to conceive of a more direct violation of these canons than the actions of the respondent in response to the August 14 order in the Brink case. The respondent injected herself into the proceeding as an advocate for one of the parties. "When a judge becomes embroiled in a controversy, the line between the judge and the controversy before the court becomes blurred, and the judge's impartiality or appearance of impartiality may become compromised." In re Charge of Judicial Misconduct, 47 F.3d 399, 400 (10th Cir.1995). In this case, the respondent "`abandoned the judicial role to become an advocate for [her] own ruling.'" See Fletcher v. Com'n on Judicial Performance, 19 Cal.4th 865, 910, 968 P.2d 958, 983, 81 Cal.Rptr.2d 58, 83 (1998). Such behavior by the respondent "discloses an unhealthy and wholly improper concern with the protection of [her] own rulings from appellate reversal." See Roberts v. Com'n on Judicial Performance, 33 Cal.3d 739, 746, 661 P.2d 1064, 1068, 190 Cal.Rptr. 910, 914 (1983), disapproved on other grounds, Doan v. Commission on Judicial Performance, 11 Cal.4th 294, 11 Cal. App.4th 474A, 45 Cal.Rptr.2d 254, 902 P.2d 272 (1995). Simply stated, the individual judge of the court whose order is being reviewed is not a proper party to the proceeding. Id.
The responsibility of a judge is to decide matters that have been submitted to the court by the parties. The judge may not, having decided a case, advocate for or, as in this case, materially assist one party at the expense of the other. Such advocacy creates the appearance, and perhaps the reality, of partiality on the part of the judge. This, in turn, erodes public confidence in the fairness of the judiciary and undermines the faith in the judicial *563 process that is a necessary component of republican democracy.
In response to the August 14 order in the Brink case, the respondent engaged in ex parte communications with the county attorney regarding a pending criminal proceeding, in a manner calculated to prejudice the defendant. That conduct was unethical, prejudicial to the administration of justice, and has brought the judicial office into disrepute. See § 24-722.

MOTION TO APPOINT SPECIAL PROSECUTOR
We next turn to the respondent's motion for the appointment of a special prosecutor to appeal from Brink's resentencing in the county court. We determine that the respondent's motion, made in a public record, violated Canon 3B(9) of the Code. That canon provides, in relevant part:
A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to interfere substantially with a fair trial or hearing.... This section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This section does not apply to proceedings in which the judge is a litigant in a personal capacity.
The comment to Canon 3B(9) further states in part:
The requirement that judges abstain from public comment regarding a pending or impending proceeding continues during any appellate process and until final disposition. This section does not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity, but in cases such as a writ of mandamus where the judge is a litigant in an official capacity, the judge must not comment publicly.
The respondent's motion for appointment of a special prosecutor involved public comment on the merits of a matter that was, at the time, pending before the county court. Those comments were intended to force an appeal from Brink's resentencing on behalf of the Statea result which would undoubtedly represent a substantial interference with a fair trial or hearing. The comment to 3B(9) makes plain that a judge is acting in an official capacity, and not a personal capacity, when commenting on a case that the judge presided over in the course of his or her official duties. The Nebraska Code of Judicial Conduct is based in part on the American Bar Association's Model Code of Judicial Conduct (1999), which has been adopted in several jurisdictions; other courts considering provisions similar to Canon 3B(9) have similarly concluded that a judge's public statements shall be considered to be in an official capacity when the statements are part of an official duty, related to an official duty, or sought from or given by the judge because of his or her official position. See, e.g., Matter of Hey, 188 W.Va. 545, 425 S.E.2d 221 (1992) (citing cases).
Canon 3B(9) does provide an exception permitting judges to make "public statements in the course of their official duties." We note that there is a significant distinction between comments made in an official capacity and statements made in the course of official duties. For instance, courts are often required, in resolving matters submitted to them, to criticize the decisions or reasoning of other courts. Here, however, the Brink case was not pending before the respondent and she had no official duties with respect to the disposition of the casemuch less official duties that required any public statements *564 to be made. While the respondent became involved in the Brink case in her official capacity as a county court judge, it cannot reasonably be said that her motion to appoint a special prosecutor, made after the respondent's official responsibility for the Brink case had been terminated, was made in the discharge of any official duty with respect to the case.
Canon 3B(9) also plainly states that a judge's public comments are restricted while a proceeding is pending or impending "in any court." Given this unambiguous language, we conclude that Canon 3B(9)'s limitations on public comments apply where a trial judge comments on a matter that is before another trial judge or has been taken to an appellate court. See, e.g., Broadman v. Commission, 18 Cal.4th 1079, 959 P.2d 715, 77 Cal.Rptr.2d 408 (1998); In re Inquiry of Broadbelt, 146 N.J. 501, 683 A.2d 543 (1996); Matter of Hey, supra; Ryan v. Com'n on Judicial Performance, 45 Cal.3d 518, 754 P.2d 724, 247 Cal.Rptr. 378 (1988). In limiting the scope of commentary regarding pending cases in any court, the rule precludes the possibility of undue influence on the judicial process and the threat to public confidence posed by a judge from one court or jurisdiction criticizing the rulings or technique of a judge from a different jurisdiction. See In re Inquiry of Broadbelt, supra. Such comments could affect the outcome of the case, appear to exert pressure on a judge to decide a certain way, and undermine public confidence in judicial decisions. See id.
We also conclude that the respondent's motion, and the stated basis for that motion, was "public comment" within the meaning of Canon 3B(9). A matter is public if it is open and available to all, i.e., accessible to everybody. Broadman, supra. While the respondent's comments were not made in a context as public as, for instance, a press conference called for the purpose of criticizing the August 14 order, the respondent nevertheless was in open court, thus making her comments in a public forum and preserving them as part of the public record. Such comments are, therefore, "public" within the meaning of Canon 3B(9).
We observe that contrary to the respondent's suggestion, § 23-1205 offers no basis for the appointment of a special prosecutor under the circumstances of the Brink case. Section 23-1205 gives the district court the authority to appoint an acting county attorney in the event of absence, sickness, or disability of the county attorney. Stewart v. McCauley, 178 Neb. 412, 133 N.W.2d 921 (1965). The term "disability" has been interpreted to cover situations where the county attorney by reason of prior employment disqualified himself to act in the new case. See id.
However, the respondent made no allegations in the Brink case to support a finding of "disability" on the part of the county attorney, other than the county attorney's failure to follow the course of action favored by the respondent. The respondent's personal dissatisfaction with the performance of the county attorney's office does not constitute "disability" within the meaning of § 23-1205. The purpose of § 23-1205 is the protection of the public by making certain that a county attorney's duties shall not be influenced by private interests. Stewart, supra. When the respondent asked the district court to appoint a special prosecutor in the Brink case, essentially for the purpose of personal vindication, the respondent sought relief contrary to both the language and intent of § 23-1205.
In short, the respondent's motion for the appointment of a special prosecutor was without legal foundation, was made in a *565 public forum while the Brink case was pending before the county court, and could reasonably have been expected (and was, in fact, intended) to unfairly interfere with the disposition of the Brink case. The content of that motion represents "public comment" that is prohibited by Canon 3B(9).
We also conclude, as did the Commission, that the hearing held on October 30 and 31, 2000, involved ex parte communications within the meaning of Canon 3B(7). The record reflects only belatedly successful attempts to inform the county attorney regarding the interference by the respondent in the Brink case, and no involvement by Brink or his appointed counsel. The fact that the district court may bear some responsibility for the ex parte nature of the proceedings does not absolve the respondent of her ethical duty, under Canon 3B(7), to neither "initiate" nor "permit" ex parte communications. Based on this reasoning and the analysis of Canon 3B(7) previously set forth, we conclude that the respondent's involvement in the October 30 and 31 hearing violated Canon 3B(7) of the Code.
We further determine that the respondent's motion to appoint a special prosecutor eroded the integrity and independence of the judiciary and fostered both impropriety and the appearance of impropriety, in violation of Canons 1 and 2A of the Code. A judge's defense of his or her own orders, prior to the resolution of appeal, may create the appearance of partiality. See In re Boston's Children First, 244 F.3d 164 (1st Cir.2001). See, also, J & J Industries v. Carpet Showcase, 723 So.2d 281 (Fla.App.1998). In the Brink case, the August 14 order was not even on appeal; instead, the respondent sought to force an appeal in order to vindicate her original sentence. The respondent defended her decision not only through public comment, but attempted legal intervention. The respondent's abortive intervention not only made the appearance of partiality more acute, but pushed the respondent past appearances and into the realm of actual partiality.
By making public comments in an attempt to justify and defend a decision, and in seeking intervention from the district court to force appellate review of her decision, the respondent adopted the role of an advocate. See Broadman v. Commission, 18 Cal.4th 1079, 77 Cal.Rptr.2d 408, 959 P.2d 715 (1998). The respondent's inappropriate and unethical foray into the prosecution of a matter for the purpose of vindicating her prior ruling shattered the appearance of an impartial magistrate, and was an evident attempt to intrude into the authority of another branch of government. See Ryan v. Com'n on Judicial Performance, 45 Cal.3d 518, 247 Cal.Rptr. 378, 754 P.2d 724 (1988). Such actions are, to an objective observer, prejudicial to public confidence in the integrity and impartiality of the judiciary. See, Broadman, supra; Canon 2A.
As previously stated, the respondent's motion to appoint a special prosecutor violated Canons 1, 2A, and 3B(9) of the Code. The October 30 and 31, 2000, hearing on the motion involved ex parte contacts in violation of Canon 3B(7) of the Code. This conduct, and the respondent's conduct in meeting with Alioth, were in clear violation of the Code. We therefore proceed to consider the appropriate sanction for the respondent's unethical conduct.

DISCIPLINE
Section 24-722 provides, in relevant part, that a "judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed six months, or removed from office for ... (6) *566 conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The Commission recommended that the respondent be suspended from office, without pay, for a period of 45 days. While the recommendation of the Commission is entitled to be given weight, it is incumbent upon this court to independently fashion an appropriate penalty. In re Complaint Against Jones, 255 Neb. 1, 581 N.W.2d 876 (1998).
The goals of disciplining a judge in response to inappropriate conduct are to preserve the integrity of the judicial system as a whole and to provide reassurance that judicial misconduct will not be tolerated. In re Complaint Against Empson, 252 Neb. 433, 562 N.W.2d 817 (1997). We discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. Id.
The discipline imposed must be designed to announce publicly our recognition that there has been misconduct. In re Complaint Against Jones, supra. It must be sufficient to deter the respondent from engaging in such conduct again, and it must discourage others from engaging in similar conduct in the future. Id. We weigh the nature of the offenses with the purpose of the sanctions and examine the totality of the evidence to determine the proper discipline. Id.
We again emphasize that the issue in the instant case is not whether the sentence the respondent imposed on Brink was appropriate or whether the district court was correct in reversing the respondent's original judgment. Our sole concern in this proceeding is the conduct of the respondent in response to the August 14 order reversing the respondent's judgment. We have concluded that the respondent's conduct after the August 14 order violated several provisions of the Code. Moreover, the ethical violations of the respondent are grave, striking fundamentally at the integrity of the judicial system. The determination whether conduct is prejudicial to the administration of justice depends not so much on the judge's motives, but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers. In re Complaint Against Jones, supra. To a knowledgeable observer, the respondent's actions in response to the August 14 order are unethical, intolerable, and nearly inconceivable.
We also note that the respondent's conduct is all the more serious because it was directly related to the performance of her official duties. The misconduct of a judge in his or her official capacity is more culpable than extrajudicial misconduct. In re Complaint Against Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984). The respondent engaged in acts which were not only unethical and unauthorized by law, but which the respondent should have known were beyond her judicial authority and the scope of Nebraska law. The respondent's patent misunderstanding of her judicial responsibility serves not to mitigate, but to aggravate the severity of her misconduct. See McCullough v. Com'n on Jud. Performance, 49 Cal.3d 186, 260 Cal.Rptr. 557, 776 P.2d 259 (1989).
That having been said, we take note of the respondent's testimony that she thought her actions were permitted by the Code and that she did not intend to violate the Code. Although we have concluded that the respondent was profoundly mistaken, we have no reason to question the respondent's veracity in stating that she *567 intended, and intends, to abide by the Code. The record also shows no other acts of misconduct attributed to the respondent, nor any previous imposition of discipline. Thus, the record before us leads us to conclude that the respondent's conduct is indicative of serious lapses in judgment, but that those lapses, related to a single case, are not symptomatic of a defect in character that would disqualify the respondent from holding judicial office. The record does not show that the conduct at issue in this case is likely to be repeated.
Accordingly, we determine that removal from office is unwarranted. Because the respondent's misconduct was in her official capacity, however, and because of its serious nature, we conclude that a heavy sanction is necessary. Given the limitations imposed by § 24-722, we determine that the appropriate discipline is a 120-day suspension from office without pay.

CONCLUSION
The record reflects the respondent's concerns about domestic violence, its victims, and its effect on society. However, domestic violence is not the issue presented in this proceeding, and the respondent is not being disciplined for her stance relative to domestic violence. Instead, the respondent is being disciplined because she abandoned her judicial impartiality to assist the State's prosecution of a criminal case, and later attempted to intervene in, and influence the outcome of, that case. The respondent's concerns about domestic violence, however well founded, cannot excuse the respondent's unethical conduct. The respondent's conduct, in reaction to the August 14 order of the district court reversing the respondent's judgment in the Brink case, was plainly in violation of Canons 1, 2A, and 3B(7) and (9) of the Nebraska Code of Judicial Conduct. As discipline, we impose a 120-day suspension from office without pay, effective on the issuance of the mandate.

JUDGMENT OF SUSPENSION WITHOUT PAY.
HENDRY, C.J., and McCORMACK, J., not participating.