In re Complaint Against Gregory M. Schatz,
District Court Judge of the Fourth Judicial
District of the State of Nebraska.
State of Nebraska ex rel. Commission on
Judicial Qualifications, relator, v.
Gregory M. Schatz, respondent.
___ N.W.2d ___

Filed April 18, 2014.    No. S-13-139.

1. **Judges: Disciplinary Proceedings: Appeal and Error.** In a review of the findings and recommendations of the Commission on Judicial Qualifications, the Nebraska Supreme Court shall review the record de novo and file a written opinion and judgment directing action as it deems just and proper, and may reject or modify, in whole or in part, the commission's recommendation.

2. ____: ____: ____. In a review of the findings and recommendations of the Commission on Judicial Qualifications, upon its independent inquiry, the Nebraska Supreme Court must determine whether the charges against the respondent are supported by clear and convincing evidence and which, if any, canons of the Nebraska Code of Judicial Conduct and subsections of Neb. Rev. Stat. § 24-722 (Reissue 2008) have been violated.

3. ____: ____: ____. If violations of the Nebraska Code of Judicial Conduct and subsections of Neb. Rev. Stat. § 24-722 (Reissue 2008) are found, the Nebraska Supreme Court must then determine what discipline, if any, is appropriate under the circumstances.

Original action. Judgment of public reprimand.

Anne E. Winner for relator.

Thomas F. Hoarty, Jr., of Byam & Hoarty, for respondent.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.
This is a judicial misconduct case. Gregory M. Schatz, a district judge for the Fourth Judicial District, improperly intervened in a case involving his friend, Michael Davlin, by ordering him released from jail on his own recognizance before arraignment. Both the appointed special master and the Commission on Judicial Qualifications (Commission) recommended publicly reprimanding Schatz. Because of the nature

of the misconduct and the presence of several mitigating circumstances, we agree with their recommendation and hereby publicly reprimand Schatz.

## BACKGROUND

The Commission's complaint against Schatz charged him with misconduct in violation of the Nebraska Code of Judicial Conduct, the Nebraska Constitution,[1] and Neb. Rev. Stat. § 24-722(6) (Reissue 2008). In essence, the complaint alleged that Schatz had improperly intervened in a felony drunk driving case by contacting the jail and using his judicial authority to instruct the personnel to release his friend Davlin without paying a bond.

In his amended answer, Schatz admitted to the majority of the complaint's allegations. Schatz also affirmatively alleged that he understood he had been wrong to intervene in Davlin's case, that he had no further involvement in Davlin's case since contacting the jail, and that he would not intervene in any such matter in the future. Schatz alleged that he had acted without any improper motive and that, when he contacted the jail, he believed that a recognizance bond was proper. Schatz also affirmatively alleged that he had since taken a judicial ethics course, that he had never before received any disciplinary sanctions, and that he generally had a good reputation with members of the bar and voters in his area.

We appointed the Honorable Jeffre Cheuvront, a retired district court judge, to serve as special master. At the hearing before the special master, Schatz testified that he had received a voicemail message late at night from Davlin's girlfriend (also Schatz' friend) explaining what had happened to Davlin and that he was in jail. Schatz testified that he listened to the voicemail early the next morning, that he called Davlin's girlfriend back around 7 a.m., and that he told her he would "see what [he] could do." Schatz testified that he then called the jail, explained who he was, and told them to release Davlin on his own recognizance.

---

[1] Neb. Const. art. V, § 30.

Schatz testified that after he left for work, he felt he had made a mistake and immediately went to see Donald Kleine, the Douglas County Attorney. Schatz met with Kleine about an hour after Schatz' telephone call to the jail. Schatz told Kleine what he had done and that he was sorry. The record shows that Kleine had a policy in felony drunk driving cases to not participate in setting a bond until arraignment before a county judge. Schatz testified that he was unaware of that policy, but now being aware of it, he intended to follow it in the future. Schatz testified that he understood he had made a mistake, that he had successfully completed a judicial ethics course, and that he had not been disciplined in the past. Schatz also offered into evidence many letters in support of his character and overall competence.

Other witnesses' testimony corroborated and expanded on Schatz' testimony. The jail employee whom Schatz spoke with that morning testified that Schatz called the jail around 7:15 a.m. She verified it was Schatz through his identification code and then set Davlin's release in motion, as Schatz requested. The jail employee testified that although that was not normally how things were done, she had to follow a judge's orders.

Kleine testified that before he became county attorney, there was a policy or custom where, in felony drunk driving cases, bond could be set early, before arraignment. But that changed when Kleine became county attorney, and in such cases, his policy was to not participate in setting a bond until arraignment before a county judge. Kleine also testified about the conversation with Schatz. Kleine described Schatz as apologetic, and after Kleine reviewed Davlin's arrest report, he explained to Schatz his policy and that he did not think Schatz' mistake would affect the progression of the case.

The Honorable Susan Bazis, a county judge, also testified. Bazis explained that two other county judges informed her of Schatz' involvement in Davlin's case. Bazis testified that several days after Davlin's release, she met with Schatz about the incident. Bazis testified that she told Schatz she thought he may have violated the judicial code and that she felt obligated to report it if he did not, and she did in fact do so. Bazis

testified that Schatz was not "at all" defensive when she came to him, that he later apologized to her for putting her in that position, and that she respected him as a judge.

Matt Kuhse, a deputy county attorney, also briefly testified. He testified that Davlin would not have been released early but for Schatz' intervention, that Kuhse would not have agreed to an initial recognizance bond, that subsequent judges continued Davlin's recognizance bond, and that Schatz had a good reputation. Stuart Dornan, a local attorney, similarly testified regarding Schatz' reputation, and he testified about the policy regarding bond setting in felony drunk driving cases before Kleine became county attorney.

The special master's factual findings generally tracked the testimony set forth above, as there was no real dispute as to what happened. Based on those factual findings, the special master found that Schatz had violated several provisions of the judicial code and that he had violated the Nebraska Constitution and § 24-722(6). The special master then noted that Schatz had admitted his wrongdoing and had "expressed genuine remorse for his conduct." The special master also observed that this was an isolated incident unlikely to recur and that all the witnesses (and support letters offered into evidence) praised Schatz' abilities and integrity. In light of those circumstances, the special master felt the appropriate sanction was "no more than a public reprimand."

The Commission, after independently reviewing the record and hearing argument, adopted the special master's factual findings and likewise recommended a public reprimand. Schatz subsequently filed a "Consent to Reprimand," and we ordered both the Commission and Schatz to submit briefs on whether the Commission's proposed disposition was just, proper, and consistent with prior dispositions involving similar misconduct.

## STANDARD OF REVIEW

[1-3] In a review of the findings and recommendations of the Commission, this court shall review the record de novo and file a written opinion and judgment directing action as it deems just and proper, and may reject or modify, in whole

or in part, the Commission's recommendation.[2] Upon our independent inquiry, we must determine whether the charges against the respondent are supported by clear and convincing evidence and which, if any, canons of the Code and subsections of § 24-722 have been violated.[3] If violations are found, we must then determine what discipline, if any, is appropriate under the circumstances.[4]

## ANALYSIS

Our first task in judicial misconduct cases is to determine whether there is clear and convincing evidence to support the charges.[5] Here, there is. There is essentially no dispute that Schatz used his judicial authority to order the release of Davlin without Davlin's paying a bond. The record shows that Schatz' actions were not in accord with how bonds were normally set in felony drunk driving cases. Specifically, the record shows that without Schatz' intervention, Davlin would have remained in jail until his arraignment in county court, when presumably either he would have been released on his own recognizance or a monetary bond would have been set. In the latter and more probable circumstance, Davlin would have been held in jail until he posted bond.

Based on these facts, we agree with both the special master and the Commission that Schatz primarily violated the following provisions of the Nebraska Revised Code of Judicial Conduct: § 5-301.2 (judge shall act to promote confidence in judiciary and avoid impropriety and appearance of impropriety), § 5-301.3 (judge shall not abuse office to advance personal interests), § 5-302.4(B) (judge shall not allow personal interests or relationships to influence judicial conduct or judgment), and § 5-302.9(A) (judge shall not, except for certain limited situations, have ex parte communications or

---

[2] See *In re Complaint Against Florom*, 280 Neb. 192, 784 N.W.2d 897 (2010).

[3] See *id*.

[4] See *id*.

[5] See *In re Complaint Against Lindner*, 271 Neb. 323, 710 N.W.2d 866 (2006).

communications outside presence of parties or their lawyers concerning pending or impending matter). We also agree that Schatz' actions constituted willful misconduct prejudicial to the administration of justice that brings the judicial office into disrepute.[6]

Our second task is to determine the appropriate sanction for Schatz' misconduct.[7] We note that both the special master and the Commission independently determined that under the circumstances, a public reprimand was the appropriate sanction. While we give some weight to these recommendations, we must review the record ourselves and come to our own conclusions as to the proper sanction.[8]

In doing so, we find it useful to look at past cases involving judicial misconduct. Admittedly, as the Commission noted in its brief, prior cases do not involve the same type of misconduct present here. Nevertheless, we believe that parallels may be drawn and comparisons made, and that by doing so, we may be consistent in imposing discipline for judicial misconduct. Moreover, a look at prior cases, regardless whether the misconduct is of the same type, provides guidance as to the general principles and factors we look at in determining the proper discipline.

For example, in *In re Complaint Against White*,[9] we suspended a county judge without pay for her actions in trying to obtain appellate review of a district court decision reversing one of her orders. Over the course of several months, the judge met with the deputy county attorney several times; provided her with case law and reasons why the district court's order was allegedly incorrect; asked the district court to appoint a special prosecutor to appeal the decision; and, through personal counsel, later filed her own petition to appoint a special county

---

[6] See, Neb. Const. art. V, § 30; § 24-722(6).

[7] See *In re Complaint Against Lindner, supra* note 5.

[8] See, e.g., *In re Complaint Against White*, 264 Neb. 740, 651 N.W.2d 551 (2002); *In re Complaint Against Jones*, 255 Neb. 1, 581 N.W.2d 876 (1998).

[9] *In re Complaint Against White, supra* note 8.

attorney to render an advisory opinion on the correctness of the court's decision.[10]

And in *In re Complaint Against Florom*,[11] we removed a county judge from office for his repeated and flagrant intervention, over several months, in two cases involving his personal acquaintances. There, the judge threatened reprisal against a practicing attorney if he were to act against the judge's interests, repeatedly made known his personal interest in the cases to various lawyers, and "invoked his judicial office repeatedly in serving as a character reference for a convicted criminal,"[12] in violation of the judicial code.

Schatz' misconduct comes nowhere close to the level of impropriety in *In re Complaint Against White* and *In re Complaint Against Florom*, or in other cases where we have ordered suspension or removal from office.[13] Further, we note that the record shows that Schatz' misconduct had no effect (outside of the obvious) on the progression or outcome of Davlin's case. And we note that Schatz' misconduct, while clearly improper, was an isolated incident; there was no pattern of misconduct.[14]

Also, there are mitigating circumstances. After calling the jail, Schatz immediately recognized he had made a mistake, met with Kleine to tell him what he had done, and was apologetic.[15] Schatz, since being appointed to the bench in 2000, has never before been disciplined.[16] After recognizing what he had done was improper, and in an effort to improve his understanding of judicial ethics, Schatz enrolled in and completed

---

[10] See *id*.

[11] *In re Complaint Against Florom, supra* note 2.

[12] *Id*. at 203, 784 N.W.2d at 905-06.

[13] See, e.g., *In re Complaint Against Krepela*, 262 Neb. 85, 628 N.W.2d 262 (2001).

[14] Compare *id*., with *In re Complaint Against Jones, supra* note 8, and *In re Complaint Against Staley*, 241 Neb. 152, 486 N.W.2d 886 (1992).

[15] Cf. *In re Complaint Against Reagan*, No. S-35-030003 (Neb. Comm. on Jud. Qual. June 2, 2003).

[16] See, *In re Complaint Against Lindner, supra* note 5; *In re Complaint Against White, supra* note 8.

a judicial ethics course.[17] We note too that Schatz has, at all times, cooperated with the Commission.[18] Finally, the record shows that Schatz, outside of this incident, has served the public well as a judge, a factor to be considered in determining the appropriate discipline.[19]

After considering our case law and the particular circumstances here, we agree with both the special master and the Commission that a public reprimand is appropriate. We recognize that the misconduct here does not necessarily match up with that of prior cases where a public reprimand was issued.[20] But a harsher sanction is unwarranted, because Schatz' misconduct is much less severe than in cases where we have ordered suspension or removal from office[21] and there are several mitigating circumstances.

## CONCLUSION

Schatz improperly exercised his judicial authority for Davlin, a friend. Such misconduct cannot be condoned. Both the special master and the Commission suggested that a public reprimand was the appropriate sanction. Considering the nature of the misconduct and the various mitigating circumstances, we agree.

JUDGMENT OF PUBLIC REPRIMAND.

HEAVICAN, C.J., not participating.

---

[17] See *In re Complaint Against Lindner, supra* note 5 (citing *In re Complaint Against Swartz*, No. S-35-000003 (Neb. Comm. on Jud. Qual. Sept. 8, 2000)).

[18] See *id*. (citing *In re Complaint Against Huber*, No. S-35-050003 (Neb. Comm. on Jud. Qual. Aug. 11, 2005)).

[19] See *In re Complaint Against Krepela, supra* note 13.

[20] See, e.g., *In re Complaint Against Lindner, supra* note 5.

[21] See, *In re Complaint Against Florom, supra* note 2; *In re Complaint Against White, supra* note 8; *In re Complaint Against Krepela, supra* note 13.