IN RE COMPLAINT AGAINST JACK B. LINDNER, COUNTY COURT JUDGE OF THE THIRD JUDICIAL DISTRICT OF THE STATE OF NEBRASKA.
STATE OF NEBRASKA EX REL. COMMISSION ON JUDICIAL QUALIFICATIONS, RELATOR, V. JACK B. LINDNER, RESPONDENT.

710 N.W.2d 866

Filed March 24, 2006.    No. S-35-050002.

Anne E. Winner, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for relator.

James E. Gordon, of DeMars, Gordon, Olson & Zalewski, for respondent.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## BACKGROUND

This original action is before the court following a complaint filed on February 7, 2005, by the Nebraska Commission on Judicial Qualifications (Commission). The complaint charged the respondent, Jack B. Lindner, a county court judge for the Third Judicial District, with misconduct in violation of the Nebraska Code of Judicial Conduct; Neb. Const. art. V, § 30; and Neb. Rev. Stat. § 24-722(6) (Reissue 1995).

A hearing on the complaint was held on April 21, 2005, before the Honorable Gerald E. Moran, a district court judge who was appointed to serve as special master. The special master concluded that the allegations of the complaint were supported by clear and convincing evidence, that Lindner's conduct violated the Nebraska Code of Judicial Conduct, and that the conduct brought the judicial office into disrepute, as prohibited by § 24-722(6).

The Commission adopted the findings of the special master and found by clear and convincing evidence that Lindner had violated the Nebraska Code of Judicial Conduct. The Commission recommended a public reprimand. On August 3, 2005, Lindner and special counsel for the Commission stipulated that this court may accept the findings and recommendation of the Commission, and Lindner consented to an order of reprimand. On October 13, we entered an order directing the parties to brief whether the proposed disposition is just, proper, and consistent with prior dispositions involving similar conduct in violation of the Nebraska Code of Judicial Conduct.

## FACTS

The complaint filed by the Commission alleged that during the processing of a misdemeanor criminal matter in Lancaster County Court on June 24, 2004, Lindner addressed the defendant with a "harsh and angry tone and demeanor." As the defendant was leaving the courtroom, Lindner made a derogatory remark in an apparent reference to the defendant or persons with him. The

complaint alleged that the statement was directed toward court personnel working in their official capacity. The complaint also asserted that Lindner's conduct was prejudicial to the administration of justice and brought the judicial office into disrepute in violation of article V, § 30, and § 24-722(6).

The complaint alleged that the conduct violated the following provisions of the Nebraska Code of Judicial Conduct:

## CANON 1
### A JUDGE SHALL UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY

A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code shall be construed and applied to further that objective.

. . . .

## CANON 3
### A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY

. . . .

B. Adjudicative Responsibilities.

. . . .

4. A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . .

5. A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race [or] national origin . . . and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.

In his answer, Lindner admitted that he was "stern and insistent in his intention" to continue the defendant's case over his objections. Lindner stated that he used this approach to maintain order, "not out of anger or hostility," and that the remark was

made to himself, although it was overheard by a witness because of the witness' proximity to the judge.

After a hearing, the special master determined that the two main issues to be decided were whether Lindner made the remark to court personnel working in their official capacity and whether the defendant had left the courtroom by the time the remark was made.

The special master reviewed and summarized the testimony offered at the hearing as follows: Paul A. Johnson, a former Lancaster County Court bailiff who was on duty in Lindner's courtroom at the time the remark was made, testified that the defendant required the assistance of an interpreter, although the defendant appeared to understand some English. When the defendant's case was called, he was told by Lindner that the case would be continued due to a lack of time. The defendant tried to explain that a continuance would impose a hardship on him because of his frequent travels to Europe. The special master found that Lindner "rather harshly informed" the defendant that he would be required to appear or would face arrest for failure to appear. The special master stated: "[Lindner's] tone may have been somewhat angry because he misunderstood the defendant in that he thought the defendant said his case could not be continued because he was an 'important businessman' both in the United States and in Europe. The defendant never made such a statement." The special master found that the defendant appeared frustrated by the continuance and Lindner's admonition.

According to the special master, the defendant and his interpreter walked away, apparently intending to leave the courtroom. Lindner then ordered the defendant to return to the bench and told him that he could not leave until Lindner excused him. The special master stated that Lindner appeared "rather harsh and angry." The defendant's paperwork was completed and handed to Johnson, who then handed it to the interpreter. The interpreter and the defendant turned to leave the courtroom.

The special master found that when the defendant was approximately 30 feet away from the bench, Lindner looked at Johnson and the deputy sheriff and stated: "'Son of a bitch. Fucking Bosnian.'" Johnson testified that the statement was

made in a conversational tone of voice and that he feared the comment would be picked up and amplified by the courtroom sound system. The special master stated that neither the defendant nor the interpreter appeared to react to the comment, and they exited the courtroom. When the defendant went to the court clerk's window to be assigned a new trial date, he asked for a different judge. Upon learning of the defendant's request, Johnson reported Lindner's remark to the county court's presiding judge. Lindner subsequently recused himself from the defendant's case, and it was reassigned to the presiding judge.

The special master found that Johnson's recollection of the events was accurate and was corroborated by the transcript and a tape recording and that the remark was said in a normal tone of voice, not mumbled or muttered. The special master found that the remark was "obviously said to someone" and that Lindner looked directly at Johnson and at the deputy when he made the remark.

Johnson testified that he had not previously heard Lindner make a racist or discriminatory remark. The special master found that Lindner's only disagreement with Johnson's testimony was whether the remark was directed at or spoken to anyone. The special master found by clear and convincing evidence that Lindner made the offensive remark to court personnel working in their official capacity and that the defendant had not left the courtroom before the remark was made.

The special master found that the defendant did not hear the offensive remark when it was made. His request for a different judge appeared to be based on the exchange between Lindner and the defendant concerning continuation of his case. A letter from the defendant dated July 19, 2004, requesting a new judge referred only to the court proceeding itself and made no mention of any improper remark.

The special master found by clear and convincing evidence that the allegations contained in the complaint were true, and he concluded that Lindner's conduct violated Canons 1, 1A, 3, and 3B(4) and (5) of the Nebraska Code of Judicial Conduct and was conduct prejudicial to the administration of justice that brought the judicial office into disrepute in violation of article V, § 30, and § 24-722(6).

The Commission considered the entire record before the special master and received into evidence an additional exhibit containing testimonial letters from members of the Nebraska State Bar Association who had practiced before Lindner. The Commission independently reviewed the proceedings before the special master and adopted his findings.

The Commission found by clear and convincing evidence that the comment violated Canons 1A and 3B(4) of the Nebraska Code of Judicial Conduct; article V, § 30; and § 24-722(6). The Commission concluded that the statement, on its face, manifested bias based on national origin and thus compelled a determination that Lindner had also violated Canon 3B(5). It found that the statement was not intended as a generalized ethnic slur, "but was made out of personal irritation and frustration."

The Commission noted that Lindner had served as a judge for 22 years and had not previously been disciplined. It was uncontroverted that Lindner had been "remorseful, apologetic and genuinely contrite during these proceedings, admitting from the outset that the statement was a mistake on his part." The Commission recommended that this court publicly reprimand Lindner.

## STANDARD OF REVIEW

■ In a review of the findings and recommendations of the Commission, this court shall review the record de novo and file a written opinion and judgment directing action as it deems just and proper, and may reject or modify, in whole or in part, the recommendation of the Commission. *In re Complaint Against White*, 264 Neb. 740, 651 N.W.2d 551 (2002). See, also, Neb. Const. art. V, § 30(2); Neb. Rev. Stat. § 24-723 (Reissue 1995); Neb. Comm. on Jud. Qual. R. of Proc. 18 (rev. 2001); *In re Complaint Against Krepela*, 262 Neb. 85, 628 N.W.2d 262 (2001).

## ANALYSIS

We must first determine whether the charges against Lindner are supported by clear and convincing evidence and whether the Nebraska Code of Judicial Conduct and § 24-722 have been violated. See *In re Complaint Against White, supra*.

There is no dispute that the statement was made. From our review of the record, we conclude that the allegations in the complaint were supported by clear and convincing evidence, that Lindner's conduct violated Canons 1A and 3B(4) and (5) of the Nebraska Code of Judicial Conduct, and that the conduct brought the judicial office into disrepute, as prohibited by § 24-722(6). Thus, the Commission was correct in adopting the findings of the special master and in finding by clear and convincing evidence that Lindner had violated the Nebraska Code of Judicial Conduct.

We next determine the appropriate sanction. In doing so, we consider previous Nebraska cases involving judicial misconduct.

*In re Complaint Against Coady*, No. S-35-920001 (Neb. Comm. on Jud. Qual. Apr. 1, 1992), was filed after Judge Orville L. Coady made racially derogatory remarks to a litigant appearing before him. The complaint alleged that the statements violated Canons 2A and 3A(3) of the Nebraska Code of Judicial Conduct and brought the judicial office into disrepute, as prohibited by § 24-722(6).

In recommending to this court that Judge Coady receive a 3-month suspension, the Commission noted that his statements were not justified by his frustration with the litigant before him. The Commission stated that the comments had "undermine[d] the perception of the impartiality of the judiciary" and "marred the image of a justice system blind to prejudice." This court suspended Judge Coady from the performance of any judicial duties for 1 month without pay. We also ordered Judge Coady to enroll in and successfully complete a course or seminar on sensitivity to racial and cultural bias.

In another case, Judge Stephen M. Swartz was publicly reprimanded by the Commission for shouting and behaving in a hostile, excessively angry, and demeaning manner toward a defendant during sentencing. See *In re Complaint Against Swartz*, No. S-35-000003 (Neb. Comm. on Jud. Qual. Sept. 8, 2000). The Commission found that the incident in question was not an isolated incident and that Judge Swartz' "extreme tone of voice, demeanor, and language . . . were representative of courtroom behavior at certain sentencings, for a period of years preceding 1999, when he routinely hollered and berated defendants well

beyond any bounds of acceptable decorum and judicial temperament." The reprimand noted that Judge Swartz' hostile courtroom behavior and disrespectful language led to the judge's reputation for having a hostile and unreasonable disposition during criminal proceedings. The Commission found mitigating circumstances in that Judge Swartz had not been subject to prior discipline, he had acknowledged the impropriety of his behavior, and he had taken affirmative steps to remedy and control his courtroom behavior.

Judge John E. Huber was reprimanded by the Commission for demonstrating impatience, rudeness, and inappropriate judicial demeanor. See *In re Complaint Against Huber*, No. S-35-050003 (Neb. Comm. on Jud. Qual. Aug. 11, 2005). His behavior caused one of the litigants to cry, and after the case had been resolved, Judge Huber berated the litigant for crying. He stated: " 'Stop it. Grow up. That doesn't make me feel bad for you in any way.' " The Commission found that Judge Huber had cooperated fully, taken steps to correct his conduct, demonstrated improvement in his disposition, and expressed remorse.

In discussing sanctions imposed in judicial misconduct cases, we have stated:

> The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and to restore and reaffirm public confidence in the administration of justice. The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter respondent from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future. Thus, we discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned.

*In re Complaint Against Kneifl*, 217 Neb. 472, 485-86, 351 N.W.2d 693, 700 (1984).

■ Pursuant to § 24-722(6), a judge of any court of this state may be reprimanded, disciplined, censured, suspended without

pay for a definite period of time not to exceed 6 months, or removed from office for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. *In re Complaint Against Jones*, 255 Neb. 1, 581 N.W.2d 876 (1998). See, also, Neb. Const. art. V, § 30(1). Therefore, a clear violation of the Nebraska Code of Judicial Conduct constitutes, at a minimum, a violation of § 24-722(6). *In re Complaint Against Jones, supra.*

The Commission adopted the findings and recommendation of the special master that the appropriate sanction for Lindner is a public reprimand. The Commission has suggested that Lindner's comment was made out of frustration and was not an expression of racial bias. Nonetheless, such an insensitive and inappropriate comment is not to be condoned or tolerated under any circumstance.

Lindner has asserted that he did not intend his remark to be overheard by anyone, and his comment was not made directly to the defendant. Lindner has acknowledged that the remark was insensitive and inappropriate, and he has offered apologies. Lindner has served on the bench for 22 years, and this is the first disciplinary action taken against him. Evidence was received that Lindner ordinarily treats individuals equally and demonstrates no bias from the bench. There was no evidence of a pattern of unacceptable behavior on his part.

## CONCLUSION

It is this court's responsibility to dispense judicial discipline in a manner that preserves the integrity and independence of the judiciary and restores and reaffirms public confidence in the administration of justice. The sanction must serve to discourage others from engaging in similar conduct in the future. Discipline is imposed to assure the public that we will neither permit nor condone judicial misconduct.

In the case at bar, the Commission has recommended that Lindner be publicly reprimanded, and we adopt this recommendation.

JUDGMENT OF PUBLIC REPRIMAND.

HENDRY, C.J., not participating.