Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2019 09:08 AM CDT

In re Interest of Michael N., a child
under 18 years of age.
State of Nebraska, appellee and cross-appellee, and
Douglas County Attorney's Office, appellant and
cross-appellee, v. Heather N. and Robert N.,
appellees and cross-appellants.

___ N.W.2d ___

Filed March 29, 2019.    No. S-18-335.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Judges: Recusal: Appeal and Error.** A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court. An order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken.
4. **Final Orders: Appeal and Error.** Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding.
5. **Service of Process: Waiver.** A general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof.
6. **Jurisdiction: Pleadings: Parties.** A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party.
7. **Judges: Recusal: Judgments.** Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.

Appeal from the Separate Juvenile Court of Douglas County: Elizabeth G. Crnkovich, Judge. Affirmed in part, and in part dismissed.

Donald W. Kleine, Douglas County Attorney, and Mark P. Hanna for appellant.

Karen S. Nelson and Nicholas W. O'Brien, Senior Certified Law Student, of Carlson & Burnett, L.L.P., for appellee Heather N.

Kristina B. Murphree, of Marks, Clare & Richards, L.L.C., for appellee Robert N.

Peder Bartling, Special Prosecutor, of Bartling Law Offices, P.C., L.L.O., for appellee State of Nebraska.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

This appeal arises from juvenile proceedings involving Michael N. and his parents, Heather N. and Robert N. Following an appeal to the Nebraska Court of Appeals and the State's multiple dismissals and refilings of the petitions, the parents separately moved to dismiss based on lack of service and filed motions for recusal of the trial judge. After the parents argued unsuccessfully in favor of recusal, the juvenile court ordered that the Douglas County Attorney's office (County Attorney's Office) be removed as counsel for the State and ordered the appointment of a special prosecutor. Following a hearing, the juvenile court denied the motions to dismiss and entered a detention order requiring that Michael remain in the temporary custody of the Nebraska Department of Health and Human Services (the Department).

Multiple appeals have now been filed. The County Attorney's Office appeals the order removing it from the case

and appointing a special prosecutor, and on that issue, we conclude that we lack jurisdiction. As to Heather's and Robert's cross-appeals of the order denying their motions to dismiss and the detention order, we have jurisdiction, but those issues have been waived because the parents made general appearances in seeking recusal. Finally, we have jurisdiction to address Heather's and Robert's challenges to the order overruling their motions to recuse, but we find no merit to their arguments.

## BACKGROUND

This case involves Heather, Robert, and their son Michael, who was born in December 2011. Michael has trisomy 8, a congenital condition which requires a special feeding regimen. In July 2016, Michael arrived at an Omaha hospital extremely malnourished after traveling and living for an unspecified amount of time in a furnished semitrailer truck cab with his parents, two siblings, and two large dogs. Similar iterations of juvenile court proceedings under three separate case numbers followed.

*Initial Juvenile Court Proceedings.*

On July 25, 2016, the State, represented by the County Attorney's Office, filed a petition in case No. JV 16-1277 seeking to adjudicate Michael pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The juvenile court, Hon. Elizabeth G. Crnkovich presiding, issued a protective custody order temporarily placing Michael in the custody of the Department. Shortly thereafter, the parents left Nebraska. Attempts to serve the parents in person were unsuccessful, and the juvenile court allowed service by publication in Nebraska and in Georgia where the parents had said they maintained a residence.

Heather's and Robert's court-appointed counsel filed multiple motions to dismiss based on insufficient process and insufficient service of process. They argued that the notices by publication did not include statutorily required language. The juvenile court overruled the parents' motions to dismiss.

The County Attorney's Office later moved for dismissal due to an unspecified mistake in service by publication. In response, on February 2, 2017, the juvenile court dismissed the petition without prejudice and terminated its jurisdiction. The same day, the County Attorney's Office filed another petition and supplemental petition on behalf of the State, seeking adjudication of Michael and termination of Heather's and Michael's parental rights, docketed as case No. JV 17-213.

In a subsequent appeal, the Court of Appeals summarized the juvenile court proceedings in case No. JV 17-213 as follows:

On February 2, 2017, the State filed both a petition and a supplemental petition alleging that Michael was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the faults or habits of Heather and Robert. Specifically, the pleadings alleged that Heather and Robert had failed to provide Michael with proper parental care, support, and supervision; had failed to provide Michael with safe, stable, and appropriate housing; and had failed to place themselves in a position to parent Michael. The pleadings also alleged that termination of Heather's and Robert's parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(1), (2), and (9) (Reissue 2016) and that such termination was in Michael's best interests. Finally, the pleadings alleged that pursuant to Neb. Rev. Stat. § 43-283.01 (Reissue 2016), reasonable efforts to reunify Michael with his parents were not required.

Also on February 2, 2017, the State filed ex parte motions requesting that the juvenile court place Michael in the immediate custody of the Department and outside his parents' home. The juvenile court granted the State's request and placed Michael in the temporary custody of the Department in a foster home. The court scheduled a detention hearing to review Michael's custody and placement for February 7. On February 6, the day prior to the

scheduled detention hearing, the court appointed both
Heather and Robert with counsel.

On February 7, 2017, the detention hearing was held.
Neither Heather nor Robert appeared at the hearing.
However, counsel for both Heather and Robert appeared
and made oral motions to dismiss the petition and supple-
mental petition because neither Heather nor Robert had
been properly served with notice of the pleadings or with
notice of the detention hearing. The State conceded that
Heather and Robert had not been provided notice of the
pleadings or of the detention hearing because "the where-
abouts of the parents [are] unknown."

The juvenile court denied the motions to dismiss the
petition and the supplemental petition. The court stated,
"I do not know of any pre-adjudication motion to dismiss
under the Juvenile Code or under the law." The court also
stated, "Notice and service must occur before any adju-
dication. This is the protective custody hearing, which
is often . . . a matter of immediacy." The court then,
sua sponte, took judicial notice of a "previous docket,
16-1277 . . . and the fact that the whereabouts of [the
parents] are unknown." The court indicated that it would
rule on the State's request to continue its ex parte custody
order placing Michael in the custody of the Department
and outside of Heather and Robert's home.

The court asked the State to present evidence concern-
ing Michael's custody and placement. In response, the
State asked the court to take judicial notice of the affida-
vit for removal. The court agreed to take judicial notice
of the affidavit, but that affidavit was not offered into
evidence. No other evidence was offered at the detention
hearing. The juvenile court ordered that the Department
be granted continued custody of Michael with placement
to exclude Heather and Robert's home. The court then
scheduled the adjudication hearing for April 26, 2017.
The court ordered the State "to do their diligent search

if they cannot personally serve [the parents] and secure service by publication as the law allows" prior to the scheduled adjudication hearing.

*In re Interest of Michael N.*, 25 Neb. App. 476, 478-79, 908 N.W.2d 400, 402-03 (2018).

*Appeal and Cross-Appeal*
*to Court of Appeals.*

Heather appealed and Robert cross-appealed case No. JV 17-213 to the Court of Appeals. They alleged that the juvenile court erred in overruling their motions to dismiss the petitions based on improper service and in ruling on the State's motion for continued custody when neither had been served with notice of the detention hearing.

The Court of Appeals affirmed the juvenile court's ruling on the motions to dismiss. However, the Court of Appeals reversed the juvenile court's order continuing the Department's custody. It observed that because the juvenile court had not specifically identified the subject of its judicial notice, the Court of Appeals could not determine whether such judicial notice was proper and had no evidence to support the juvenile court's finding that the parents' whereabouts were unknown. Because the parents had not received notice of the detention hearing and because the record did not show that the State made any effort to provide notice of the hearing, the Court of Appeals determined that the parents were denied their due process rights to notice of the hearing. It remanded the cause with instructions to provide the parents with notice and to hold continued detention hearings periodically until service was perfected or actual notice occurred. It mandated that the juvenile court's order of temporary custody should remain in effect for 10 days following the mandate. See *id*.

*Juvenile Court Proceedings on Remand.*

On March 14, 2018, the State, represented by the County Attorney's Office, moved to dismiss case No. JV 17-213.

The same day, it filed new petitions under a new case No. JV 18-382. The new petitions were nearly identical to the previous petitions in case No. JV 17-213 and again sought adjudication and termination of parental rights. It also provided the juvenile court with an ex parte order of immediate temporary custody for case No. JV 18-382, which the juvenile court signed but did not file on March 14. On March 15, at a hearing on the State's motion to dismiss case No. JV 17-213, the juvenile court expressed "concern" about the motion. It stated:

> I am trying to find a way to say it that does not — honestly, I am kind of worried it was not well thought out in the context of this case. What I intend to do today is to have the first appearance and protective custody as it was originally scheduled for and — and may seek updated briefing on the — you know, the last case and the one that everybody cites in terms of the State's prerogative in this child protection matter is a case called in re: Moore, M-o-o-r-e. . . . I do not know that it's — that may be the last thing. I do not know. But it would be helpful in this circumstance to the Court in discerning what to do.
>
> . . . I have not quite ordered that of you, of the parties yet, but I am laying some groundwork while I am thinking about it.

The juvenile court heard brief arguments from the parties on the State's motions to dismiss, with the parents' counsel arguing in favor of the motion, but the juvenile court did not order written briefs on the issue. Moments later, the juvenile court signed the order to dismiss the matter pending under case No. JV 17-213 and ordered Heather and Robert to present themselves to the juvenile court to request court-appointed counsel for case No. JV 18-382. It filed the aforementioned ex parte order of immediate temporary custody and scheduled a detention hearing for March 21 in case No. JV 18-382.

*Motions to Dismiss and*
*Motions to Recuse.*

On March 20, 2018, Heather's and Robert's counsel filed nearly identical motions to dismiss and/or vacate the petitions and the ex parte order pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(4) and (5). Their motions claimed that because there was no evidence of service, the matter should be vacated and/or dismissed. They alleged that failure of proper service had violated their due process rights. They pointed out that the matters arising out of the State's petition in case No. JV 18-382 were substantially like the filings in case No. JV 17-213, which they claimed had been dismissed in an effort to circumvent the Court of Appeals' mandate that the State provide evidence that service had been perfected or actual notice had occurred. The parents contended that due to successive filings of similar petitions, Michael had been in the Department's custody since July 2016 without his parents' being properly served.

Also on March 20, 2018, Heather's and Robert's counsel filed motions to recuse. Both motions alleged that based on the circumstances of the proceedings, a reasonable and objective person would find that there is an appearance of partiality and impropriety by the juvenile court and requested that Judge Crnkovich recuse herself. The motions specifically cited the juvenile court's requirement that the parents present themselves to the court for the appointment of counsel, despite the fact that they had not been served or notified of the proceedings as required by the Court of Appeals.

*Detention Hearing on March 21, 2018;*
*Appointment of Special Prosecutor;*
*and Denial of Motions to Recuse.*

On March 21, 2018, the parents' counsel appeared at the detention hearing and sought dismissal of the petitions. Counsel for Heather and counsel for Robert also argued in support of the motions to recuse, with counsel for Heather presenting

evidence on the matter. Heather's counsel argued that the juvenile court's prior remarks to the County Attorney's Office cautioning dismissal gave the appearance that the juvenile court was prosecuting the case. The juvenile court stated on the record in open court that the motions to recuse were denied.

The family permanency specialist assigned to the case then testified concerning his efforts to contact the parents. Upon questioning by the juvenile court, he stated that the County Attorney's Office had not asked him for the information he had provided at the hearing. The County Attorney's Office did not cross-examine the witness.

At that point, the juvenile court announced that it was removing the County Attorney's Office from the case and appointing a special prosecutor. It stated that the way the County Attorney's Office had addressed the case was "problematic."

Following the hearing, the juvenile court issued an order removing the County Attorney's Office, appointing a special prosecutor, overruling the motions to recuse, continuing the motions to dismiss, and continuing the first appearance and detention hearing on the petition and supplemental petition.

*Continued Detention Hearing on April 9, 2018;*
*Denial of Motions to Dismiss;*
*and Detention Order.*

On April 9, 2018, the juvenile court conducted a hearing on the motions to dismiss, first appearance, and detention. The family permanency specialist testified that on April 2, the parents were served in the State of Washington with notice of the April 9 hearing. The special prosecutor offered documents purporting to show service of summons, which the juvenile court received. At the conclusion of the hearing, the court announced that the motions to dismiss were denied.

On April 11, 2018, the juvenile court issued a detention order that also memorialized its ruling disposing of the parents' motions to dismiss. It found that the parents had been personally served; that the juvenile court's jurisdiction was proper;

that reasonable efforts had been made to prevent the need for removal; that due to exigent circumstances in evidence, it would be contrary to Michael's health, safety, or welfare to return home; and that it was in his best interests to remain in the temporary custody of the Department. Accordingly, the juvenile court ordered that Michael remain in the temporary custody of the Department and scheduled an adjudication hearing for June 1.

The County Attorney's Office timely appealed, and the parents cross-appealed.

## ASSIGNMENTS OF ERROR

On appeal, the County Attorney's Office assigns that the juvenile court erred in ordering the removal of the County Attorney's Office and in appointing a special prosecutor.

In their separate cross-appeals, Heather and Robert each assign, condensed and restated, that the juvenile court erred in (1) denying their respective motions to dismiss and/or vacate, despite violations of their due process rights in relation to service of process; (2) detaining Michael in continued protective custody without sufficient admissible evidence that they had received service of process, in violation of their due process rights; (3) failing to notify them of their right to counsel; and (4) overruling their respective motions to recuse.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017).

[2] A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court. *In re Interest of J.K.*, 300 Neb. 510, 915 N.W.2d 91 (2018). An order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Id.*

## ANALYSIS

*Order Appointing Special Prosecutor:*
*No Jurisdiction.*

We begin our analysis with the appeal filed by the County Attorney's Office. The County Attorney's Office argues that the juvenile court did not have the authority to remove it from the case and appoint a special prosecutor. At oral argument, counsel for the County Attorney's Office additionally asserted that because the special prosecutor was not validly appointed, his actions on behalf of the State are void. The County Attorney's Office asks that we reverse the order appointing the special prosecutor as well as all orders entered thereafter and remand the cause with instructions for the case to proceed with the County Attorney's Office representing the State.

[3] Before reaching the legal issues presented for review, however, it is the duty of an appellate court to determine whether it has jurisdiction to decide them. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018). For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken. *Jennifer T. v. Lindsay P.*, 298 Neb. 800, 906 N.W.2d 49 (2018).

[4] Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding. Neb. Rev. Stat. § 25-1902 (Reissue 2016). Juvenile court proceedings are special proceedings. *In re Interest of Kamille C. & Kamiya C., ante* p. 226, 922 N.W.2d 739 (2019). Because this is a juvenile court proceeding, we would have jurisdiction to review the order appointing a special prosecutor if it affected a substantial right. On the other hand, if the order did not affect a substantial right, it is not a final order. See *Mutual of Omaha Bank v. Watson*, 301 Neb. 833, 920 N.W.2d 284 (2018).

Numerous factors determine whether an order affects a substantial right. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by

the order at issue. *Deines v. Essex Corp.*, 293 Neb. 577, 879 N.W.2d 30 (2016). It is not enough that the right itself be substantial, the effect of the order on that right must also be substantial. *Id.* Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter. *Id.* It also depends on whether the right could otherwise effectively be vindicated. *Id.* Stated another way, an order affects a substantial right if it affects the subject matter of the litigation such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Id.*

The County Attorney's Office purports to bring this appeal on behalf of the State. In this regard, the County Attorney's Office argues that the order removing the County Attorney's Office and appointing the special prosecutor affected a substantial right of the State. The County Attorney's Office claims that the State's substantial right to protect the welfare of children through juvenile adjudications is affected by the order removing the County Attorney's Office and appointing the special prosecutor.

In support of its argument, the County Attorney's Office directs us to *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017). The County Attorney's Office correctly points out that in that case, we recognized that the State has a right to protect the welfare of its resident children and that this right is especially important in juvenile adjudications. The County Attorney's Office asserts that the order removing it and appointing the special prosecutor affects the State's substantial right to protect children through pursuing juvenile adjudications in the same way as the order we found appealable in *In re Interest of Noah B. et al.* As we will explain, however, the order we found appealable in *In re Interest of Noah B. et al.* is materially different from the order at issue here.

In *In re Interest of Noah B. et al.*, we held that an order dismissing an adjudication petition brought by the State without leave to amend affected the State's substantial right to protect

children through juvenile adjudications. We held that this right was affected by the order dismissing the adjudication petition because it "foreclose[ed] the State from pursuing adjudication and disposition on grounds of sexual abuse" and "prevent[ed] the State from seeking to protect the children from such abuse." *Id*. at 775, 891 N.W.2d at 119-20. In other words, we found that the order dismissing the adjudication petition affected the subject matter of the adjudication proceeding by completely precluding the State from pursuing its claim for adjudication.

The same cannot be said of the order removing the County Attorney's Office and appointing the special prosecutor in this case. That order did not impact the subject matter of the adjudication proceeding in any way. Nor did it prevent the State from continuing to pursue the matter. The order merely removed one lawyer and appointed another.

In another context, we have held that an order disqualifying an attorney from representing a client does not affect a substantial right of the client. See *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997), *overruled on other grounds, Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). As we explained, an order disqualifying counsel affects a "peripheral matter" rather than the subject matter of the litigation, because regardless of who represents the client, "the same claims and defenses persist." *Id*. at 830, 560 N.W.2d at 434. The same is true here. Because the order effectively replacing the County Attorney's Office with the special prosecutor did not affect the subject matter of the litigation, we cannot say it affected a substantial right of the State.

In addition to all we have said so far, there is another reason that precludes us from reviewing the order removing the County Attorney's Office and appointing a special prosecutor. The County Attorney's Office contends that the juvenile court had no authority to remove it and appoint a special prosecutor. For this reason, the County Attorney's Office takes the position that the County Attorney's Office is entitled to represent the

State in this matter and that the special prosecutor lacks the authority to do so. The County Attorney's Office is effectively raising a question of who has authority to carry out the duties of a public office. We have held for many years that a question of title to an office can be challenged only in a direct proceeding brought for that purpose.

By way of example, in *Atkins v. Department of Motor Vehicles*, 192 Neb. 791, 224 N.W.2d 535 (1974), the Department of Motor Vehicles commenced license revocation proceedings against an individual. The individual sought to challenge the revocation on the ground that the hearing examiner was not effectively appointed. This court refused to consider the contention. We pointed out that while a hearing examiner must be effectively appointed, the lawfulness of the appointment could not be considered in the revocation proceeding. Rather, the "question of title to an office" could "only be challenged in a direct proceeding brought for that purpose." *Id.* at 793, 224 N.W.2d at 536. Many other cases hold the same. See, e.g., *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995), *disapproved on other grounds, Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004); *State v. Birdwell*, 188 Neb. 116, 195 N.W.2d 502 (1972); *State ex rel. Weiner v. Hans*, 174 Neb. 612, 119 N.W.2d 72 (1963); *Haskell v. Dutton*, 65 Neb. 274, 91 N.W. 395 (1902).

The contention by the County Attorney's Office that the special prosecutor was unlawfully appointed to represent the State in this case raises the "question of title to an office." *Atkins v. Department of Motor Vehicles*, 192 Neb. at 793, 224 N.W.2d at 536. Such a claim can be considered only in a "direct proceeding brought for that purpose." *Id*. This is a juvenile court proceeding, not a proceeding brought for the purpose of challenging the right to represent the State in this matter. We therefore cannot consider that challenge in this case.

Because we find that we do not have jurisdiction over the appeal brought by the County Attorney's Office, we dismiss its appeal.

*Detention Order and Denial of Parents'*
*Motions to Dismiss and Motions*
*to Recuse: Jurisdiction.*

We move now to the parents' challenges to the orders that overruled their motions to dismiss the petition and supplemental petition and ordered Michael's continued detention. Again, we must first address jurisdiction and determine whether there is a final order or final judgment entered by the court from which the appeal is taken. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018).

In the juvenile context, we have held that if a party's substantial rights are not determined by the court's order overruling a motion to dismiss juvenile proceedings and the cause is retained for further action, the order is not final. See *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000). We believe the denial of the motion to dismiss is such an order. The order overruling the parents' motions to dismiss merely kept the proceedings on the path toward eventual resolution on the merits and did not affect the parents' rights with finality. For this reason, the denial of the motion to dismiss was not, standing alone, immediately appealable.

But while the denial of the motion to dismiss, standing alone, was not immediately appealable, the detention order was. This court has held that a detention order entered after a hearing which continued to keep a juvenile's custody from his or her parent pending an adjudication hearing to determine whether the juvenile is neglected, pursuant to § 43-247(3)(a), is final and thus appealable. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). See, also, *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997); *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). Consequently, we have jurisdiction to review the juvenile court's detention order and the hearing that preceded it.

Our conclusion that we have jurisdiction to review the detention order returns us to the question of whether we may review the denial of the motion to dismiss. While the denial of the motion to dismiss would not have been reviewable if that were the only order on which review was sought, we find that we may review it under these circumstances. We have held that we may review otherwise nonfinal orders that "bear on the correctness" of a reviewable final order or judgment. See, e.g., *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 637, 849 N.W.2d 523, 532 (2014); *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). The denial of Heather's and Robert's motions to dismiss, which sought dismissal on the grounds that they were not properly served with process, bears on the correctness of the detention order. If Heather and Robert were not properly served or did not waive service and the action was subject to dismissal on those grounds, we would be required to reverse, vacate, or modify the detention order. Accordingly, we also have jurisdiction to review the denial of the motion to dismiss. See *Breci v. St. Paul Mercury Ins. Co., supra*.

*Denial of Parents' Motions to Dismiss
and Detention Order: Merits.*

Having determined that we have jurisdiction to do so, we proceed to review the parents' challenges of the order overruling the motions to dismiss and the detention order, which are mainly based on the grounds that Heather and Robert were not properly served with process or did not receive actual notice of hearing. We find no merit to these challenges.

[5,6] Heather and Robert have waived the arguments that they were not properly served or provided with notice. Under Neb. Rev. Stat. § 25-516.01(1) (Reissue 2016), the voluntary appearance of a party is the equivalent of service of process. Participation in the proceedings on any issue other than the defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of services of process, waives all such issues except as to the objection that the party is not

amenable to process issued by a court of this state. See *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016). See, also, *Applied Underwriters v. Oceanside Laundry*, 300 Neb. 333, 912 N.W.2d 912 (2018); *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Thus, a general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof. *Id.* A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party. *Id.*

Here, the parents, through counsel, asked the juvenile court to act on a matter apart from its jurisdiction over them. On the same day the parents raised the issue of service in their motions to dismiss, they filed motions to recuse in which they alleged an appearance of partiality by Judge Crnkovich. At a hearing the next day, counsel for Heather and counsel for Robert appeared and sought dismissal of the petitions, but they also argued in support of the motions to recuse. Heather's counsel presented evidence pertaining to recusal, arguing in part that Judge Crnkovich's prior remarks to the County Attorney's Office had given the appearance that Judge Crnkovich was prosecuting the case. The parents thus invited the juvenile court to exercise its discretion in ruling on their motions to recuse. See *Thompson v. Millard Pub. Sch. Dist. No. 17, ante* p. 70, 921 N.W.2d 589 (2019) (recusal motion addressed to discretion of trial judge to whom motion is directed). In diverging from the issue of service of process with their motions to recuse, the parents made general appearances and waived the issue of whether they had been properly served. See *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001) (motion to recuse, among other filings, invoked court's power and constituted general appearance). Therefore, the arguments in their motions to dismiss necessarily fail.

In addition to asserting that the juvenile court ought to have dismissed the petitions due to lack of service, the parents

contend that dismissal of the entire matter was warranted, because the State did not comply with the Court of Appeals' direction to hold a detention hearing in case No. JV 17-213 within 10 days. While we recognize that a detention hearing was not held on that docket within the time prescribed by the Court of Appeals, a detention hearing for Michael did ultimately occur. And more important, Heather and Robert provide no authority for the position that they were entitled to dismissal of the entire case due to the timing of this detention hearing. Indeed, we have repeatedly stated that the goal of juvenile proceedings is to protect children and promote their best interests. See, e.g., *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015); *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014). It would be inconsistent with this objective if the failure of the State to meet a procedural deadline resulted in a child who is alleged to come within the meaning of § 43-247(a), due to the faults and habits of his parents, being summarily returned to those parents.

Heather and Robert also propose the return of Michael as the remedy for the claimed continual violation of their due process rights occasioned by the successive dismissals and refilings of the juvenile petitions. We acknowledge that repeated dismissals and refilings have the potential to violate due process. But a detention hearing was held in this case after Heather and Robert waived service of process, and they do not argue that the juvenile court ruled incorrectly on the merits in ordering detention. Any complaints about the delayed detention hearing were resolved by the detention order, which, as we explain below, we affirm.

The parents' opposition to the detention order, like their challenges to the order overruling their motions to dismiss, is defeated by their waiver of service of process. Heather and Robert assert that the juvenile court erred in entering a detention order in violation of their due process rights because there was not sufficient admissible evidence that they had received

service of process or notice of the detention hearing. But as explained above, they waived service of process prior to the detention hearing. Further, Heather and Robert cannot claim that they were unaware of the detention hearing. Their counsel participated in scheduling it and represented the parents when it occurred, and the general rule is that notice to, or knowledge of facts by, an attorney is notice to, or knowledge of, the client. See *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995). We therefore reject the parents' assertions that their due process rights were violated by the detention proceedings.

*Advisement of Right to Counsel.*

Heather and Robert assign and argue that the juvenile court erred in failing to notify them of their right to counsel during the proceedings that resulted in the reviewable detention order. They point out that Neb. Rev. Stat. § 43-279.01 (Reissue 2016) confers the right of a parent to have counsel appointed if the parent is unable to afford to hire a lawyer. Under § 43-279.01, when a petition seeks adjudication or termination, the juvenile court must inform a parent of his or her right to counsel, when "the parent . . . appears with or without counsel." But for § 43-279.01 to apply, the parent must actually be present in court; the appearance by counsel alone does not trigger the statute. See *In re Interest of Maxwell T.*, 15 Neb. App. 47, 721 N.W.2d 676 (2006). In this case, Heather and Robert were not present in court and therefore were not entitled to be advised of their right to counsel, and the juvenile court was not incorrect in requiring them to appear to obtain counsel. Thus, the parents' assignments of error on this issue lack merit.

*Order Overruling Motions to Recuse:*
*Jurisdiction and Merits.*

Finally, Heather and Robert contend that the juvenile court erred in overruling their motions to recuse. Once again, we must first address whether we have jurisdiction to consider the

order appealed from. See *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45 (2018).

For the same reason we could review the denial of the motions to dismiss, we conclude that the circumstances of this case allow us to review the appeals from the order overruling the motions to recuse. We have held that a denial of a motion to recuse is generally not final and appealable in its own right. See *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005); *State v. Sklenar*, 269 Neb. 98, 690 N.W.2d 631 (2005). However, in this instance, the juvenile court's rulings on the motions to recuse "bear on the correctness" of the final, appealable detention order. See, e.g., *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 637, 849 N.W.2d 523, 532 (2014); *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). If the juvenile court incorrectly denied the motions to recuse, it would be disqualified from deciding the subsequent detention order. See *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011). Consequently, we also have jurisdiction to review the denial of the motions to recuse. See *Breci v. St. Paul Mercury Ins. Co., supra*.

As for the merits, the parents argue that both the juvenile court's decision to require their appearance before the appointment of counsel and its remarks on the State's dismissal of its own petitions create an objective appearance of impropriety, requiring recusal. We disagree.

Under Neb. Rev. Code of Judicial Conduct § 5-302.11, a judge is disqualified whenever the judge's impartiality might reasonably be questioned. Under the code, such instances in which the judge's impartiality might reasonably be questioned specifically include where "'[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer . . . .'" *Tierney v. Four H Land Co.*, 281 Neb. at 664, 798 N.W.2d at 591, quoting § 5-302.11(A)(1). Impartiality requires, among other things, that a judge must not appear to act in the dual capacity of judge and advocate. See *State v. Harris*, 274 Neb. 40, 735 N.W.2d 774 (2007). A judge's official conduct must be free

from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. See *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). The inquiry is whether a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. See *In re Interest of J.K.*, 300 Neb. 510, 915 N.W.2d 91 (2018). A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.*

[7] We first address the parents' arguments that recusal was warranted by the juvenile court's requirement that they appear for the appointment of counsel following "consistent and egregious due process violations" related to lack of service of process. Brief for appellee Heather on cross-appeal at 32. Accord brief for appellee Robert on cross-appeal at 25. We have determined that by their motions to recuse, the parents made general appearances and waived their objections to service of process, which is the basis of their due process arguments. And Heather and Robert do not explain how requiring them to present themselves for the appointment of counsel shows bias or partiality by the juvenile court. Instead, their arguments suggest that the ruling was merely wrong. But judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. *In re Interest of J.K., supra*. We conclude that the juvenile court did not abuse its discretion in declining to recuse itself on the basis of this ruling.

Likewise, we see no reasonable basis to question Judge Crnkovich's impartiality due to her comments on the State's dismissal of its own petitions. Heather and Robert argue that these comments cautioned the State about aspects of the case before ruling on the State's motion to dismiss and pointed out precedent supporting the motion to dismiss. All this, they contend, communicated the judge's view of how the State should

proceed and crossed the line from neutral and unbiased decisionmaker to advocate. We find that the remarks cited by the parents are not sufficiently clear to cross this line or otherwise give the appearance of impropriety. At most, the judge was stating the authority relevant to the issue at hand and inviting the State to consider the consequences of dismissal, not directing the State's decision. See *Torres v. Morales*, 287 Neb. at 592, 843 N.W.2d at 810 ("there are times when trial judges must inform a party of the legal consequences of an order without directing the party's decision"). And the judge's comments did not unduly interfere with the hearing. The parties were given the opportunity to argue their positions on the motions to dismiss, with the parents' counsel arguing in favor, before the juvenile court announced its ruling.

The parents also suggest that the juvenile court judge called her impartiality into question because the ex parte order that she filed after the hearing on March 15, 2018, was signed by her prior to the hearing. They seem to contend that the judge's ex parte ruling reflects that she never intended to conduct a detention hearing as required by the Court of Appeals. We simply do not understand how signing the ex parte order demonstrates an intention not to conduct a detention hearing. In fact, the judge did hold a detention hearing, after which she entered a detention order, which is one of the issues appealed. We perceive no appearance of impropriety.

For these reasons, we conclude that the juvenile court judge did not abuse her discretion in refusing to recuse herself.

CONCLUSION

As noted above, we find that we must dismiss the appeal of the County Attorney's Office, because we lack jurisdiction to consider the issue it raises, and we otherwise affirm.

This appeal exposes a troubling process begun in the Douglas County Separate Juvenile Court in 2016 which remains unresolved to this day. Given the posture of the issues we address, this court's authority is limited in this appeal. We alert the

participants that the duration and the procedure utilized have not gone unnoticed. The focus of the case needs to return to the best interests of Michael.

AFFIRMED IN PART, AND IN PART DISMISSED.

Papik, J., concurring.

I concur fully in this court's decision, including the determination that we do not have jurisdiction to decide the challenge by the County Attorney's Office to the juvenile court's order removing it from the case and appointing a special prosecutor. I write separately to emphasize my belief that our opinion should not be understood as concluding that issues related to such a removal could never be reached on appeal. In this case, it was the County Attorney's Office that challenged its removal and the court's appointment of the special prosecutor. But I can envision a scenario in which an opposing party could raise the argument that a court's removal of one prosecutor and appointment of another required the court's recusal.

Nebraska law recognizes some circumstances under which a special prosecutor can be appointed. Under Neb. Rev. Stat. § 23-1205 (Reissue 2016), a court can appoint a special prosecutor under the limited circumstances of the "absence, sickness, disability, or conflict of interest of the county attorney and his or her deputies." We have held, however, that a judge's personal dissatisfaction with the county attorney's performance does not allow for the appointment of a special prosecutor under § 23-1205. See *In re Complaint Against White*, 264 Neb. 740, 651 N.W.2d 551 (2002), citing *Stewart v. McCauley*, 178 Neb. 412, 133 N.W.2d 921 (1965).

Indeed, it does not require much imagination to conceive of potential problems that could arise if courts had the authority to remove and replace lawyers simply because the judge did not approve of the lawyers' work. One such problem is the power this would give a judge to dictate how a case is litigated. A judge with the power to remove a prosecutor based on dissatisfaction with the way the case is being prosecuted

is a judge with the power to, in a sense, decide how the case will be prosecuted. As courts have observed in other separation of powers contexts, "the power to remove is the power to control." See *In re Aiken County*, 645 F.3d 428, 442 (D.C. Cir. 2011) (Kavanaugh, Circuit Judge, concurring). See, also, *Bowsher v. Synar*, 478 U.S. 714, 106 S. Ct. 3181, 92 L. Ed. 2d 583 (1986); *Silver v. U.S. Postal Service*, 951 F.2d 1033 (9th Cir. 1991); *U.S. v. Chambless*, 680 F. Supp. 793 (E.D. La. 1988).

If a judge were to remove a prosecutor solely because of dissatisfaction with the prosecutor's work, an opposing party may be able to raise serious questions about the judge's impartiality. As we have often said, "'[a] judge must be careful not to appear to act in the dual capacity of judge and advocate.'" *Torres v. Morales*, 287 Neb. 587, 592, 843 N.W.2d 805, 810 (2014), quoting *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

But while there may be a case in which a party could argue that a court's removal of a prosecutor and appointment of a replacement crossed the line into advocacy and required the court's recusal, Heather and Robert did not do so here. While they filed motions to recuse, which are addressed in this court's opinion, the motions were filed before the appointment of the special prosecutor and no argument was made to the juvenile court that its removal of the County Attorney's Office and appointment of a special prosecutor required recusal. The issue is thus not before us in this case. See *Weber v. Gas 'N Shop*, 278 Neb. 49, 54, 767 N.W.2d 746, 750 (2009) ("[a]n appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court").

Stacy and Freudenberg, JJ., join in this concurrence.