IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF BLESSING S. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF BLESSING S. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

PHILLIP S., APPELLANT.


Filed January 7, 2020.    No. A-19-442.


Appeal from the Separate Juvenile Court of Douglas County: CHAD M. BROWN, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, and Anthony Hernandez for appellee.


PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Phillip S. appeals the order of the Douglas County Separate Juvenile Court sustaining the State's request for continued detention/protective custody of his four minor children. Phillip contends that the juvenile court erred in finding by a preponderance of the evidence that continued detention or protective custody of the minor children was necessary as a matter of law. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Shardee S. and Phillip are the parents of Blessing S., born in February 2009; Phillip S., Jr., born in February 2010; Brite S., born in October 2013; and James S., born in October 2014. Shardee is not involved in this appeal and will only be mentioned as necessary for context.

Since 2009, the family has been involved with the Department of Health and Human Services (DHHS) due to allegations of abuse, neglect, and lack of supervision of the minor children, as well as a history of substance abuse and domestic violence. The family has been offered services such as case management, family support, relative foster care, agency-based foster care, and other community assistance to help preserve and reunify the family.

In October 2018, Shardee was having a visit with the minor children when Phillip went to the visit and threatened to shoot Shardee. Phillip was arrested and charged with terroristic threats, assault, leaving the scene of an accident, and four gun-related felonies. DHHS employees attempted to contact Shardee at a hospital detox but she was not in the hospital's inpatient program and was not listed in their computer system.

In anticipation of his incarceration, at the end of October 2018, Phillip executed a power of attorney (POA) granting his mother, Jean S., the "general authority to act for [him] with respect to the following subjects" including "Personal and Family Maintenance." Under the "Special Instructions" section of the POA, Phillip wrote:

> I give Jean [S.] (mother) permission to make all decisions concerning my four children Blessing . . . , Phillip . . . , Brite . . . , and James . . . . I expect this power of attorney to be honored and relied upon until I am able to be in a position to be physically present to care for my children and make any decisions on my own.

Phillip specifically marked that he did not authorize Jean to "[d]elegate to another person to exercise the authority granted under this [POA]."

Following Phillip's incarceration, Jean did not care for the four minor children herself, but instead placed the children in the care of Patricia Jeanpaul. Jeanpaul reported that she did "not have any paperwork giving her guardianship [of the minor children] or that would allow her to get help for the kids in case of an emergency." The State removed the minor children from Jeanpaul's care on November 9, 2018.

### PLEADINGS

In November 2018, the State filed a petition alleging that the minor children were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because they lacked proper parental care by reason of Phillip's fault or habits in that (1) Phillip was currently incarcerated; (2) Phillip engages in domestic violence; (3) Phillip failed to provide the minor children with proper parental care, support, and supervision and/or protection; (4) Phillip failed to provide the minor children with safe, stable, and/or appropriate housing; and (5) as a result of the allegations, the minor children were at risk for harm. On the same day, the State filed an ex parte motion for immediate custody and an accompanying affidavit requesting that the court award DHHS temporary custody of the minor children to exclude Phillip's home. The affidavit further alleged that the placement of the children "into temporary foster care was a matter of immediate and urgent necessity for the protection and safety of said child[ren] and this situation presented a safety issue

to the child[ren] and precluded reasonable efforts to allow said child[ren] to remain in the parental/custodial home." On November 28, the juvenile court granted the ex parte motion.

In December 2018, the State filed an amended adjudication petition and motion to terminate Phillip's parental rights reasserting the allegations regarding adjudication of the children pursuant to § 43-247(3)(a) and alleging that termination was appropriate pursuant to Neb. Rev. Stat. § 43-292(2) and (7) (Reissue 2016) and that terminating Phillip's parental rights was in the minor children's best interests. At a hearing in January 2019, Phillip entered a denial to the amended adjudication petition and motion to terminate his parental rights.

DETENTION/PROTECTIVE CUSTODY HEARING

The preadjudication detention/protective custody hearing was initially scheduled for November 28, 2018, but was continued several times due to circumstances including Phillip's incarceration, the unavailability of Phillip's counsel, Phillip's request, and at the State's request due to witness unavailability caused by inclement weather. The detention/protective custody hearing was ultimately held in March 2019, during which the State's sole witness was Amanda Handbury, a children and family services specialist with DHHS.

Handbury testified that she was familiar with Phillip and the minor children because DHHS had received multiple intakes on the family beginning in June 2009 with the most recent at the end of October 2018. The most recent investigation was based upon an intake that alleged that Shardee had been visiting with the minor children when Phillip threatened her with a gun. Handbury testified that at the conclusion of her investigation, she formed an opinion that the children were at a risk for harm if they were to remain in Phillip's custody. Handbury's opinion that removal of the children was necessary was based upon the parties' history of domestic violence, substance abuse by both parents, reports of Shardee's hospitalization in a detox program, and Phillip's incarceration due to domestic violence and gun charges.

Handbury testified that she investigated placing the minor children with Jean but found that Jean was not an appropriate placement for the children based upon previous investigations of Jean, information contained in DHHS' system which provided a history of past investigations, police reports, reports from other family members, and the fact that Jean had adopted eight children with special needs and behavioral needs which created chaos in Jean's home. Handbury also expressed concerns with Jean's behavior; specifically, Handbury referenced an instance "where Jean . . . had driven [Phillip] around so that he could smash out windows when he was unable to locate his wife." Handbury also stated that "Jean has been notoriously difficult to work with . . . and being able to get all of the services that we need and to be able to do full investigations."

Following Handbury's testimony, the hearing was continued to April 2019. Phillip was the only witness to testify at the continued hearing. Phillip testified that he had been incarcerated since the end of October 2018 and remained incarcerated as of the time of the hearing for charges of terroristic threats, felon in possession of a firearm, and discharging a firearm. He further testified that in his capacity as a father, he was providing his minor children with appropriate care, housing, supervision, educational support, medical support, and emotional and physical support. Phillip stated that in October 2018, he learned that he would be incarcerated. Upon learning of his impending incarceration, Phillip executed the POA in an effort to provide legal care for his minor

children. He further testified that it was his intention to make arrangements so that a third party could provide care for his children during his incarceration.

Phillip also testified that shortly after he executed the POA, he authored a four-page document titled the "temporary delegation of parental powers" (TDPP) granting Jean full parental authority of each of the four minor children. He testified that his intention was for the POA and TDPP to work together to provide for his children during his incarceration. The TDPP referencing each of the four minor children was signed and notarized on November 15, 2018. He acknowledged that Jeanpaul's name "is not specifically in the paperwork" but that he understood that the POA and TDPP would give Jean the ability to work with Jeanpaul for the support and maintenance of his children.

Phillip testified that Jean has cared for his children when he was incarcerated and acted as a foster mother to his children. He also testified that Jeanpaul was the foster care provider for his children when he had previously been incarcerated in Iowa. Phillip stated that even though the State removed his children from Jeanpaul's care in November 2018, at the time of the April 2019 hearing, the children were placed back with Jeanpaul. He further testified that between the time that the children were removed and the hearing, he had communicated with Jeanpaul about his children through letters, telephone calls, and a visit. He further testified that he has provided his children with financial support, has sent them Christmas and birthday presents, written to them weekly, and has spoken to them often. However, on cross-examination, Phillip admitted that he knew that he was subject to an Iowa protection order prohibiting him from being around his children and that he did not inform the court or his previous caseworker about the protection order.

JUVENILE COURT'S ORAL PRONOUNCEMENT

At the conclusion of the hearing, the court made the following findings on the record:

That the [POA] that was executed by [Phillip] at the time of removal, was not a temporary delegation of parental rights or responsibility, and it was executed towards Jean [S.], not Ms. Jeanpaul.

The Court will note that based on the testimony from the first witness, day one, Ms. Jean [S.] was not an appropriate option for placement based on the number of children she already had in the home and, in addition to these four children, would not be an acceptable placement both based on the medical needs as well as the behaviors of the children.

I will note, [counsel for Phillip], what you're asking me to do is draw a connection between your client's power of attorney that was executed before the removal to Ms. Jean [S.] and saying I'm giving her the ability and authority to make decision on my behalf, and one of those decisions was placement with Ms. Jeanpaul.

The concern that I have, that I think [counsel for DHHS] has eloquently stated, is Ms. Jeanpaul was left without any legal authority to act on behalf of those children because of the way the power of attorney was executed and because we did not have a temporary delegation of parental responsibilities at that time, and the Court is not going to take that big of a leap to find that to be acceptable.

I will note that at the time of the removal, the father was incarcerated.

I will also find that despite all of this, there was an active protection order at the time of removal. It has, apparently, been amended but at the time of the removal, which is

what this Court's time frame is at this hearing, there was an active five-year protection order, which I will note from the exhibit showing the . . . original matter dismissed in August, this Court and, apparently, the State of Nebraska had no idea existed.

But even considering the [POA] and your client's decisions, there was an active and valid five-year protection order barring your client from having contact with those minor children.

In light of all of those facts, in light of the evidence in front of this Court for today's hearing, I do find exigent circumstances exist, and it is in the best interests of the minor children that they remain in the temporary custody with placement to exclude the parental home of the father.

JUVENILE COURT ORDER

On April 11, 2019, the juvenile court's written order provided that
exigent circumstances exist and it would be in the best interests and welfare of the minor children to remain in the temporary care and custody of the Nebraska Department of Health and Human Services for continued appropriate care and placement, to **exclude the parental home of the father,** until further order of the Court.

(Emphasis in original.) On May 6, during a scheduled appeal check hearing, the court reopened the protective custody hearing at Phillip's request for the limited purpose of offering exhibit 10, a transcript of the April 29, 2016, Iowa protection order proceedings. The court received exhibit 10 without objection. The following day, after reviewing exhibit 10, the court issued an order stating that its "April 10, 2019 findings remain unchanged."

Phillip has timely appealed to this court which has jurisdiction over this appeal. See, *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019) (detention order entered after hearing which continued to keep juvenile's custody from parent pending adjudication hearing is final and appealable); *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013) (detention order entered after detention hearing is final, appealable order).

ASSIGNMENT OF ERROR

Phillip contends that the juvenile court erred in finding by a preponderance of the evidence that continued detention or protective custody of the minor children was necessary as a matter of law.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Michael N., supra*; *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Zanaya W. et al.,* 291 Neb. 20, 863 N.W.2d 803 (2015); *In re Interest of Darius A.*, 24 Neb. App. 178, 884 N.W.2d 457 (2016).

ANALYSIS

Phillip contends that the juvenile court erred in finding by a preponderance of the evidence that continued detention or protective custody of the minor children was necessary as a matter of law. First, he argues that he executed the POA on October 31, 2018, "as a means of making arrangements legally to authorize a third party to provide, *inter alia*, appropriate care, housing, and support for the juveniles during his absence from their lives [due to his incarceration]." Brief for appellant at 19. Second, he claims that "[t]he record contains insufficient evidence to demonstrate that the State established that DHHS complied with [Neb. Rev. Stat.] § 43-283.01(4) [Cum. Supp. 2018] because the record contains no evidence that DHHS made any efforts -- let alone reasonable efforts -- to preserve [Phillip]'s family." Brief for appellant at 23.

POWER OF ATTORNEY

In his first argument, Phillip claims:
Rather than demonstrate that [Phillip]'s incarceration placed the juveniles at risk for harm, the record demonstrates that [Phillip]'s impending incarceration motivated him to make the appropriate legal arrangements to ensure that the juveniles were in an appropriate, safe, and stable environment and vitiate the need for [the] State to involve itself in the juveniles' lives.

Brief for appellant at 20-21.

Neb. Rev. Stat. § 43-254 (Cum. Supp. 2018) provides, in relevant part:
Pending the adjudication of any case, . . . if it appears that the need for placement or further detention exists, the juvenile may be (1) placed or detained a reasonable period of time on order of the court in the temporary custody of either the person having charge of the juvenile or some other suitable person, [or] (5) placed in the temporary care and custody of the Department of Health and Human Services when it does not appear that there is any need for secure detention, . . .

If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (2) of [Neb. Rev. Stat. §] 43-248 [(Cum. Supp. 2018) (juvenile is seriously endangered in his or her surroundings and immediate removal appears to be necessary for juvenile's protection)], the court may enter an order continuing detention or placement upon a written determination that continuation of the juvenile in his or her home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts were made to preserve and reunify the family if required under section 43-283.01.

Continued detention pending adjudication is not permitted under the Nebraska Juvenile Code unless the State can establish by a preponderance of the evidence at an adversarial hearing that such detention is necessary for the welfare of the juvenile. *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998).

Specifically, Phillip contends that the POA, which was executed prior to the State's filing of the adjudication petition and the removal of the minor children, authorized Jean "to make all decisions concerning [his] four children Blessing . . . , Phillip . . . , Brite . . . , and James." Phillip further argues that Jean used her legal authority as his agent to place the minor children in

Jeanpaul's care prior to the State's filing of the adjudication petition and "Ex Parte Motion for Immediate Custody and Pickup." He further contends that "[t]he POA's specific and unambiguous language provided Jean . . . with necessary legal authority to make such a delegation/placement." Reply brief for appellant at 5. As such, Phillip argues that his delegation of authority over his children rendered the State's removal and detention unnecessary.

We first note that Phillip actually executed two different documents. The first appears to be the Nebraska Statutory Power of Attorney form prescribed by Neb. Rev. Stat. § 30-4041 (Reissue 2016). The second appears to be the Delegation of Power by Parent or Guardian form prescribed by Neb. Rev. Stat. § 30-2604 (Reissue 2016).

As to the POA executed by Phillip on October 31, 2018, the form's "IMPORTANT INFORMATION" section makes clear that the form's purpose is to authorize an agent to make decisions governing the principal's "property." § 30-4041. We note that the form can be found within Nebraska's Uniform Power of Attorney Act. Neb. Rev. Stat. § 30-4001 et seq. (Cum. Supp. 2014). Further, the Nebraska Uniform Power of Attorney Act provides that "[t]he Nebraska Uniform Power of Attorney Act applies to all powers of attorney except: . . . (2) A power to make health care decisions." § 30-4003. Despite the POA form's direct application to property, Phillip appears to have utilized the "Special Instruction" section of the form in an attempt to authorize his mother, Jean, "to make all decisions concerning [his] four children."

Second, Phillip separately filled out a delegation of powers form contemplated by § 30-2604. That statute provides:

> A parent or a guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding six months, any of his or her powers regarding care, custody, or property of the minor child or ward, except his or her power to consent to marriage or adoption of a minor ward. A parent or guardian of a minor who is at least eighteen years of age and who is not a ward of the state, by a properly executed power of attorney, may delegate to such minor, for a period not exceeding one year, the parent's or guardian's power to consent to such minor's own health care and medical treatment.

On this form, executed on November 15, 2018, Phillip delegated "all of my powers regarding the care, custody and property of [my children] . . . not exceeding six months beyond this date. . ."

In sum, Phillip argues that his execution of these forms in tandem should have been sufficient to defeat the State's request to detain his children. Whether Phillip can legally delegate his powers of care, custody, and property over his children utilizing a statutory form POA or whether the language Phillip utilized in the form was sufficient to delegate those functions are matters we need not decide because Phillip attempted to delegate those powers to Jean. However, Jean, who apparently realized that she could not care for the children, transferred care of Phillip's children to Jeanpaul who was then in charge of the children at the time of their removal by the State. Under those circumstances, Jeanpaul had no authority to make legal or other custodial-based decisions on the children's behalf. Accordingly, because Philip was incarcerated and could not care for the children and because Jeanpaul was not legally empowered to make custodial care-based decisions on the children's behalf, we hold that detention by the State was necessary for the welfare of the children. In doing so, we note that the State is not required to establish a

specific harm or risk to the juvenile; it is enough if the evidence establishes by a preponderance of the evidence that the conduct or circumstances of the parent or custodian are such that it is contrary to the juvenile's welfare to remain in, or return to, the parental or custodial home. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

Phillip separately argues that even though Jean could not care for the children, it remained within Jean's power to delegate the power to care for the children pursuant to the authority granted to Jean by Phillip in the POA. In making that claim, he cites to § 30-4002(1) which defines the term "agent" and refers to an agent's power of delegation. Assuming without deciding that Phillip could use a POA to delegate custodial decisions governing his children to an agent, Phillip specifically indicated in the POA form that he provided no such authority to Jean. Conversely, if Phillip was relying on the TDPP as the document which delegated his power of care, custody, and property over his children to his agent, the language of the document did not provide the agent with the power to further delegate that power to another; nor does the language of § 30-2604 provide the right of an agent to further delegate such authority.

In sum, Phillip could not care for the children due to his incarceration and Jean, the individual to whom Phillip did attempt to delegate custodial authority, was not an appropriate caregiver due to the fact that she already cared for eight children with special and behavioral needs which created chaos in her home. Even if Jean had wanted to delegate authority to Jeanpaul, she had no legal authority to do so. As a result, leaving the children in the care of Jeanpaul exposed said children to a risk of harm because Jeanpaul did not have the authority to properly care for the minor children. Accordingly, this assignment of error fails.

REASONABLE EFFORTS

Phillip's second argument is that the record does not contain evidence to establish that DHHS made reasonable efforts to preserve and reunify Phillip's family or eliminate the need for removing the minor children as required by Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2018).

Section 43-283.01 provides, in pertinent part:

(1) In determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the juvenile's health and safety are the paramount concern.

(2) Except as provided in subsections (4) and (5) of this section, reasonable efforts shall be made to preserve and reunify families prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home.

Subsection (4) of § 43-283.01 lists exceptions to the requirement that the State provide reasonable efforts to preserve and reunify the family; however, none of those exceptions are applicable to the instant case.

Here, the juvenile court's April 11, 2019, order stated:

[T]he Court finds that exigent circumstances exist and it would be in the best interests and welfare of the minor children to remain in the temporary care and custody of [DHHS] for continued appropriate care and placement, to **exclude the parental home of the father**, until further order of the Court.

(Emphasis in original.) The juvenile court's May 7, 2019, order held that, after reviewing exhibit 10, its April 10 findings remained unchanged.

Based upon our de novo review of the record, we find that the juvenile court's finding that exigent circumstances existed and that it was in the minor children's best interests to remain in the temporary custody of DHHS was, in effect, a determination that reasonable efforts had been made to preserve and reunify Phillip's family or eliminate the need for removing the minor children. We further find that this determination was supported by the evidence which established that upon determining that the minor children were in the care of Jeanpaul who did not have guardianship of the children or otherwise have authority to care for the children, the State attempted to locate Shardee but was unsuccessful. Additionally, the evidence established that the family had been involved with DHHS since 2009 due to allegations of abuse, neglect, and lack of supervision of the minor children, as well as a history of substance abuse and domestic violence. The family has been offered services such as case management, family support, relative foster care, agency-based foster care, and other community assistance to help preserve and reunify the family. At the time that the State discovered the children had been placed in Jeanpaul's care with no legal authority to provide custodial care on their behalf, Phillip was incarcerated. Taken together, the evidence established that reasonable efforts were made to preserve and reunify Phillip's family or eliminate the need for removing the minor children.

## CONCLUSION

The evidence showed by a preponderance of the evidence that continued detention of the minor children was necessary for their health, safety, and welfare and that reasonable efforts were made to preserve and reunify Phillip's family or eliminate the need for removing the minor children. Thus, the juvenile court did not err in continuing the minor children's detention with DHHS pending adjudication.

AFFIRMED.